Boyd HULS *v.* STATE of Arkansas

CR 89-206

785 S.W.2d 467

Supreme Court of Arkansas
Opinion delivered March 19, 1990

*John Wesley Hall*, for petitioner.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for respondent.

PER CURIAM. The petitioner Boyd Huls was convicted of second degree murder and sentenced to twenty years imprisonment. The conviction was affirmed. *Huls* v. *State*, 27 Ark. App. 242, 770 S.W.2d 160 (1989). The petitioner now seeks permission to proceed in circuit court for post-conviction relief pursuant to Criminal Procedure Rule 37.

The petitioner, who was represented at trial by Carmack Sullivan and Wayne Emmons, contends that his attorneys were ineffective. In reviewing a claim of ineffective assistance of counsel, we adhere to the standard set out by the United States Supreme Court in *Strickland* v. *Washington*, 466 U.S. 668 (1984). Under *Strickland*, to prevail on a claim of ineffective assistance of counsel, the petitioner must show first that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the

"counsel" guaranteed the petitioner by the sixth amendment. Second, the petitioner must show that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must show there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. In making a determination on a claim of ineffectiveness, the totality of the evidence before the judge or jury must be considered.

The petitioner was convicted of the murder of Pasha Williams, a young woman with whom he had had a personal relationship for some time. The petitioner claims that his attorneys were remiss in not preserving for appellate review his objection to testimony by Dr. Allen Windberry, a dentist, whose testimony he contends contained hearsay. At trial, Dr. Windberry testified that he had treated Williams for some missing and cracked teeth and that she told him that the injury was caused by the petitioner's having thrown a lamp at her. (The injury to Williams' teeth occurred approximately six months before her death.) Prior to trial, the petitioner's counsel made an oral motion *in limine* asking for the exclusion of Dr. Windberry's testimony about the "broken teeth and the history. . . ." The trial court denied the motion. When Windberry testified at trial, defense counsel did not object. On appeal, petitioner's attorney argued that Windberry's statements were inadmissible hearsay and the Arkansas Court of Appeals agreed; the court, however, declined to address the issue further because the motion *in limine* was so vague as to require counsel to renew the objection at trial in order to preserve it for appeal, which had not been done. The petitioner now argues that counsel's failure to preserve the issue for appeal constituted ineffective assistance of counsel.

Although Windberry's testimony contained hearsay, petitioner's counsel were not ineffective for failing to preserve the

issue. Ineffective assistance of counsel cannot be established merely by showing that some error was made by counsel. Moreover, it is not enough to show that a failure to object prevented an issue from being addressed on appeal since the standard for judging the effectiveness of counsel requires a showing of more than the failure to raise an issue; the petitioner must establish prejudice at trial under *Strickland*. *Strickland* requires a showing that, but for counsel's errors, the jury would have had a reasonable doubt respecting guilt. In weighing the prejudice which accrued from an error by counsel, the totality of the evidence before the jury must be considered. Here, even if a timely objection at trial could have prevented the jury from hearing Dr. Windberry's testimony, the evidence that Williams had accused petitioner of assaulting her six months before her death, when taken with the entire body of the evidence presented at trial, does not lead this court to conclude that there was a reasonable probability that the jury would have acquitted petitioner if Windberry had not testified.

■ The petitioner next contends that his attorneys were ineffective for failing to challenge the testimony of Officer Paul Martin on the ground that Martin was not a certified police officer. Martin, who searched the petitioner's home pursuant to petitioner's voluntary consent, found a hammer and a blood-stained blanket which were admitted into evidence by the state. There is no merit to petitioner's argument for several reasons. First, petitioner has misunderstood the focus of our cases construing Ark. Code Ann. § 12-9-108 (1987), which provides that action taken by a police officer is invalid if the officer has not met the standards of the Arkansas Commission on Law Enforcement Standards and Training. In those cases where we reversed the convictions of defendants cited by a non-qualified officer, the only charging instrument was the non-qualified officer's citation. *Mitchell* v. *State*, 298 Ark. 536, 769 S.W.2d 8 (1989); *Grable* v. *State*, 298 Ark. 489, 769 S.W.2d 9 (1989). In a Rule 37 proceeding the burden is on the petitioner to demonstrate prejudice, and petitioner does not allege that a valid criminal information was not filed charging him with the offense, or even so much as allege that Officer Martin was the arresting officer. Moreover, even if the evidence obtained by Officer Martin and his testimony were excluded, there was ample evidence to convict

petitioner of second degree murder.

The petitioner also contends that he was denied effective assistance of counsel in that Carmack Sullivan was unprepared for trial, old and in poor health, and physically incapable of trying the case. He states that Wayne Emmons was called in to act as co-counsel only two weeks prior to trial and was required with little advance notice to conduct a majority of the questioning for the defense. Petitioner states further that Sullivan for all practical purposes turned the trial over to Emmons with the cross-examination of the state's third witness and that Sullivan admitted that he could not hear the witnesses, that he physically faltered throughout the trial and was asleep during substantial parts of the state's case.

While a reading of the five-volume transcript cannot show whether counsel physically faltered or fell asleep, it does reveal that Sullivan took a much more active part in the trial than petitioner indicates. Sullivan cross-examined several witnesses after the point where petitioner says he turned the case over to Emmons, made objections, took part in an in-camera discussion during petitioner's testimony, took part in the discussion of jury instructions and argued in favor of bond after trial. Sullivan's statement about not being able to hear witnesses was made in a pre-trial hearing in which he said that he and other lawyers had difficulty hearing because of the poorly arranged courtroom. The trial judge replied that the clerk was engaged in discussions with the quorum court to rearrange the courtroom to make it more convenient. While Sullivan may have been old and somewhat infirm, the burden is on petitioner to point to specific instances where counsel's conduct resulted in actual, identifiable prejudice to him. *Strickland* v. *Washington, supra; Brents* v. *State*, 285 Ark. 199, 686 S.W.2d 395 (1985). Petitioner has not met that burden.

Petitioner also fails to point out any specific deficiency on Emmons's part which may have arisen from his lack of preparation, except for contending that Sullivan was physically unable to put character witnesses on the stand at the close of the defense and that Emmons could not do so because he had left the trial for an appointment in Nashville, Tennessee. The failure to call character witnesses in itself, however, does not constitute

ineffective assistance of counsel because it cannot be said that the absence of the witnesses created a reasonable probability that the outcome of the trial would have been different had the witnesses testified.

The petitioner states that his theory of defense was that Pasha Williams had been addicted to amphetamines over a long period of time and was suffering from a form of drug induced psychosis. He contended at trial that at some time during the night of her death Williams began to hallucinate, that she became violent and picked up a hammer and struggled with him until he finally decided to take her to the hospital. He then wrapped her in a blanket, put her in the back of his pickup truck and drove her to the hospital where she died shortly after arriving at the emergency room. The petitioner claims that although evidence was available almost none was presented to support his theory other than the testimony of the petitioner, his family, and a social worker with North Arkansas Human Services. He states that numerous witnesses were available to corroborate his story and that some were subpoenaed but none were called. Petitioner further alleges that although Dr. Jonathan Lipman was called to testify for the defense about amphetamine induced psychosis, "little or no" evidence was presented to show that the victim suffered from it. He ignores totally the fact that Dr. Lipman, an expert witness with substantial credentials, testified that he had reviewed Williams's medical records and that she did indeed suffer from amphetamine induced psychosis. Other witnesses also testified about her bizarre behavior.

Petitioner claims that Dr. Jay Dicks, a forensic pathologist from the University of Missouri Hospital, was available to testify and prepared to review the autopsy report and give an expert opinion as to the actual cause of death. The petitioner does not state what the actual cause of death may have been, but he states that Dr. Dicks could have testified in support of petitioner's theory that Williams' death was caused in part by the negligence of the Fulton County Hospital staff in their use of a laryngoscope during the resuscitation effort. However, he does not state that Dr. Dicks would have so testified. Petitioner asserts that two "nurses," identified only as Harris and Ferrell with no designation as to their professional training, could have testified that Dr. Benton, the doctor who treated the victim in the emergency room,

did not establish an airway with the laryngoscope and that a nurse inserted the instrument correctly about a half-hour after the victim arrived. No more is said about what the nurses saw which would suggest that medical negligence caused the injuries to the victim's throat. Petitioner fails to mention the fact that Dr. Benton and Dr. Malak, the medical examiner, were questioned by the defense at length on whether the laryngoscope could have caused the damage to the victim's throat and both firmly maintained that it could not have done so. In light of their testimony, it cannot be concluded that the testimony of the nurses, the specific facts of whose testimony are not provided, could have changed the outcome of the trial.

In a related allegation, petitioner claims that the fact that two hours were spent trying to resuscitate the victim was never brought out. The record refutes the claim. Several direct references were made to the two-hour effort, and the jury was made well aware of the time spent in the emergency room.

In a footnote petitioner states that Dr. Malak's testimony on the cause of *any* death has been demonstrated in recent months to be "suspect," and thus the defense was particularly prejudiced by not rebutting his evidence. The assertion will not be considered. This court does not take notice of gratuitous assertions based on matters not in the record.

Counsel must use his own best judgment to determine which witnesses will be beneficial to his client. *Tackett* v. *State*, 284 Ark. 211, 680 S.W.2d 696 (1984). When assessing an attorney's decision not to call a particular witness, it must be taken into account that such a decision is largely a matter of professional judgment which experienced advocates could endlessly debate, and the fact that there was a witness or witnesses that could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness. *Dumond* v. *State*, 294 Ark. 379, 743 S.W.2d 779 (1988). The petitioner has not shown that counsel's decision not to call any particular witness amounted to more than a tactical decision.

Finally, petitioner claims that counsel were ineffective for failing to seek a change in venue because of prejudicial pretrial publicity. He has attached articles from newspapers in Fulton County which mention that he was originally charged

with manufacturing a controlled substance, methamphetamine, as well as second degree murder. The petitioner argues that even though the drug charge was eventually dismissed almost two years after it was filed, the jury had been bombarded with news coverage of the methamphetamine charge, resulting in gross prejudice to him. He further maintains that a change of venue would have been warranted because the trial was postponed for one month after the jury was selected. The decision of whether to seek a change of venue is largely a matter of trial strategy and therefore not an issue to be debated under our post-conviction rule. *Neff* v. *State*, 287 Ark. 88, 696 S.W.2d 736 (1985). To establish that the failure to seek a change in venue amounted to ineffective assistance of counsel, a petitioner must offer some basis on which to conclude that an impartial jury was not empaneled. Petitioner here does not specify any conduct of a juror from which it can be ascertained that the juror was unprepared to afford him an impartial hearing of the evidence. Jurors are presumed unbiased, and the burden of demonstrating actual bias is on the petitioner. *Linell* v. *State*, 283 Ark. 162, 671 S.W.2d 741 (1984); *Jeffers* v. *State*, 280 Ark. 458, 658 S.W.2d 869 (1983). The essentially conclusory allegations made by petitioner are not sufficient to overcome the presumption that the jurors were truthful when they stated that they could give the petitioner a fair trial. A defendant is not entitled to a jury totally ignorant of the facts of a case, *Richardson* v. *State*, 292 Ark. 140, 728 S.W.2d 189 (1987), and he is not entitled to a perfect trial, only a fair one. *Hoback* v. *State*, 286 Ark. 153, 689 S.W.2d 569 (1985).

Petition denied.

PRICE, J., not participating.