Cite as 2014 Ark. 184

# SUPREME COURT OF ARKANSAS

No. CR-13-223

| | |
|---|---|
| ROBERT LEANDER STIGGERS<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** April 24, 2014<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION<br>[NO. CR2003-793]<br><br>HONORABLE WENDELL LEE GRIFFEN, JUDGE<br><br><u>AFFIRMED</u>. |

**KAREN R. BAKER, Associate Justice**

On June 16, 2005, a Pulaski County jury convicted appellant, Robert Leander Stiggers, of first-degree murder and first-degree battery. He was sentenced to forty years imprisonment for the murder conviction and twenty years imprisonment for the battery conviction with the sentences to run consecutively. Stiggers's convictions and sentences were affirmed in *Stiggers v. State*, CACR 05-1399 (Ark. App. May 31, 2006) (unpublished).

Stiggers's convictions and sentences stem from a January 10, 2003 shooting that occurred in the Hollingsworth Courts neighborhood in Little Rock. Raynaud Muldrew and Wardell Newsome were both shot. Muldrew was found in a vehicle, and Newsome was lying near it. Muldrew died as a result of his injuries. Despite being shot in the back of the head, Newsome survived his injuries. Immediately after the shooting and at trial, Newsome identified Stiggers as the shooter. The relevant facts, as recounted by the court of appeals in Stiggers's direct appeal are as follows:

SLIP OPINION

Sergeant Sidney Allen . . . discovered Wardell Newsome lying on the ground near the vehicle. He had been shot four times in the right shoulder and once behind his right ear. While at the scene, Newsome told Sgt. Allen that [Stiggers] was the person who shot him.

. . . Detectives Eric Knowles and Keith Cockrell questioned Newsome about the incident while he was undergoing treatment at UAMS. Newsome explained that he had borrowed a friend's car earlier in the evening and picked up Muldrew. He told the detectives that Muldrew had purchased marijuana and then the two of them went to a liquor store to purchase cigarettes and a couple of Swisher cigars. While there, they saw [Stiggers] who asked for a ride to Hollingsworth Courts. [Stiggers] was riding directly behind Newsome in the back seat of the car, and during the ride, [Stiggers] apparently became aggressive and started yelling. Newsome stated that, at one point, he turned around and noticed that [Stiggers] was holding a small handgun. While following [Stiggers's] directions into the Hollingsworth Courts neighborhood, Newsome testified that [Stiggers] told them to "say goodnight" and "say your prayers" because he was going to kill them. Newsome indicated that he did not think [Stiggers] was serious because they had known each other and been friends for years.

Newsome explained that, as he pulled into an alley in the residential complex at [Stiggers]'s request, [Stiggers] shot him behind the right ear. He pointed out that he lost consciousness immediately, and when he regained consciousness, he noticed Muldrew slumped over in the front passenger seat. Newsome explained that he then crawled out of the vehicle to look for help, and a neighbor called the police. Newsome recognized [Stiggers]'s picture in a group of photos presented by Detectives Knowles and Cockrell, and he again identified him as the shooter.

*Stiggers*, CACR 05-1399, slip op. at 1.

After the court of appeals issued its mandate, on August 20, 2006, Stiggers filed his initial Rule 37.1 petition in Pulaski County Circuit Court. After several continuances due to issues related to Stiggers's representation, on July 2, 2012, Stiggers filed an amended petition and the circuit court held a hearing that same day. On November 16, 2012, the circuit court denied Stiggers's petition. Stiggers now brings this appeal and presents one issue for review: the circuit court erred by denying Stiggers's Rule 37.1 petition because Stiggers received unconstitutional ineffective assistance of counsel when his counsel failed to interview

SLIP OPINION

and call certain witnesses.

"On appeal from a circuit court's ruling on a petitioner's request for Rule 37 relief, this court will not reverse the circuit court's decision granting or denying post-conviction relief unless it is clearly erroneous. *E.g.*, *Prater v. State*, 2012 Ark. 164, at 8, 402 S.W.3d 68, 74. A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*, 402 S.W.3d at 74." *Mason v. State*, 2013 Ark. 492, at 1–2, ___ S.W.3d ___, ___.

Our standard of review requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). Claims of ineffective assistance of counsel are reviewed under the following standard:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable.

*Burton v. State*, 367 Ark. 109, 111, 238 S.W.3d 111, 113 (2006) (quoting *Strickland*, 466 U.S. at 687).

The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* The petitioner claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying

3

the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *See id*. Therefore, Stiggers must first show that counsel's performance fell below an objective standard of reasonableness and then that counsel's errors actually had an adverse effect on the defense. *Id*. Stiggers must satisfy both prongs of the test, and it is not necessary to determine whether counsel was deficient if Stiggers fails to demonstrate prejudice as to an alleged error. *Abernathy v. State*, 2012 Ark. 59, 386 S.W.3d 477 (per curiam).

Further, with respect to an ineffective-assistance-of-counsel claim regarding the decision of trial counsel to call a witness, such matters are generally trial strategy and outside the purview of Rule 37.1. *Banks v. State*, 2013 Ark. 147. Where a petitioner alleges ineffective assistance of counsel concerning the failure to call witnesses, it is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. *Moten v. State*, 2013 Ark. 503 (per curiam); *Stevenson v. State*, 2013 Ark. 302 (per curiam) (citing *Hogan v. State*, 2013 Ark. 223 (per curiam)). In order to demonstrate prejudice, the petitioner is required to establish that there was a reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. *See Carter v. State*, 2010 Ark. 231, 364 S.W.3d 46 (per curiam). Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to the client. *Id*. Nonetheless, such strategic decisions must still be supported by reasonable professional judgment. *Id*. Finally, "[w]hen assessing an attorney's decision not to call a particular witness, it must be taken into account

4

that the decision is largely a matter of professional judgment which experienced advocates could endlessly debate, and the fact that there was a witness or witnesses that could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness. *Huls v. State*, [301 Ark. 572, 785 S.W.2d 467 (1990)]; *Dumond v. State*, 294 Ark. 379, 743 S.W.2d 779 (1988)." *Johnson v. State*, 325 Ark. 44, 49, 924 S.W.2d 233, 236 (1996).

We now turn to the sole issue raised by Stiggers. Stiggers's allegation of ineffective assistance of counsel is that his trial counsel failed to interview four potential witnesses in preparation for Stiggers's defense or call them as a witness at trial: Eddie Pride, Temika Donley, Kristopher Johnson, and Damika Mitchell. Stiggers contends that these witnesses would have supported his argument that another person, a person named "Jason,"[1] was the shooter. He further asserts that the witnesses' testimony was admissible under hearsay exceptions but that his trial counsel did not interview or call the witnesses at trial to determine what exceptions applied. Stiggers asserts that the witnesses's testimony would have impeached the State's witness. Finally, Stiggers asserts that he was prejudiced by his defense counsel's failure to call these witnesses.

Stiggers's theory at trial was as follows: while he was purchasing drugs from the two victims, two unnamed men came up to the vehicle and shot the victims. Stiggers testified at trial that the two men approached the vehicle and let Stiggers run away prior to the shooting, and that as he was running away he heard the gunshots. In sum, Stiggers's theory of the case was that someone else was the shooter.

---

[1]The record does not reflect Jason's last name.

Prior to trial, on April 8, 2005, the circuit court conducted a pretrial hearing. The State made a *Zinger* motion to prohibit Stiggers from eliciting testimony from witnesses regarding "Jason" because the testimony was inadmissible hearsay.[2] The circuit court granted the motion. Stiggers acquiesced to the circuit court's ruling and agreed that the "Jason" testimony was hearsay, but explained that there could be a chain of events in the testimony where Stiggers could elicit such testimony. Stiggers complied with the circuit court's ruling but reserved the right to approach the bench if such circumstances arose. At trial, defense counsel did not call Pride, Mitchell, Donley, or Johnson as witnesses.

In his petition, Stiggers asserted that counsel was ineffective for not interviewing or calling the four witnesses, three of which he alleges would have provided "Jason" testimony.

---

[2]A *Zinger* motion refers to *Zinger v. State*, 313 Ark. 70, 75–76, 852 S.W.2d 320, 323 (1993), where we held that the standard for admissibility of evidence tending to incriminate other persons in the crime being charged is as follows:

> A defendant may introduce evidence tending to show that someone other than the defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third party. Evidence which does no more than create an inference or conjecture as to another's guilt is inadmissible.

> [T]he rule does not require that any evidence, however remote, must be admitted to show a third party's possible culpability . . . . [E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime.

*Id.* (quoting *State v. Wilson*, 367 S.E.2d 589 (N.C. 1988) and *People v. Kaurish*, 802 P.2d 278 (Cal. 1990)).

At the postconviction hearing, Stiggers introduced statements from two of the "Jason" witnesses: Donley and Johnson. The third "Jason" witness, Pride, also provided a statement; however, the circuit court did not accept Pride's statement because Pride was not known at trial, there was no statement in the case file, and Pride had not testified at a previous hearing. Stiggers did not introduce a statement from Mitchell. At the Rule 37 hearing, defense counsel testified that he did not recall interviewing the four witnesses and did not call them as witnesses.

Stiggers first asserts that Eddie Pride would have testified that Newsome told Pride that Stiggers was not the shooter but that it was "Jason." Second, Stiggers asserts that Donley, Muldrew's girlfriend, would have testified that Muldrew told her that "Jason" had threatened to kill Muldrew, Muldrew's child, and the child's mother. Third, Stiggers asserts that Johnson would have testified that "Jason" had threatened to kill Muldrew. He contends that Johnson would have testified that he overheard Muldrew on the phone with "Jason" four or five days before the shooting, and heard "Jason" discussing a "bad drug deal" or "theft of drugs" involving "Jason's" drugs, and threatening to kill Muldrew and others. Fourth, Stiggers contends that Mitchell would have testified that she saw both victims prior to the shooting and that the vehicle's lights were off, which was contrary to the State's witness's testimony.

First, with regard to Pride, although Stiggers testified that he informed his counsel about Pride, defense counsel testified that prior to trial he had likely heard Pride's name, but did not recall knowledge of Pride's allegations that Newsome had told Pride that Stiggers was not the shooter. Defense counsel further testified that,

that certainly would have been something . . . very important. . . . I don't recall that ever being told to me. If I had been given that information, that would certainly would have been the diligent thing to do, to look for Mr. Pride. I would say if I had recognized that there was possibly a prior statement out there saying that someone else had done it coming from a living witness, I would have absolutely asked him about it.

With regard to Donley and Johnson, defense counsel testified that after reviewing Donley and Johnson's police statements in the file, he considered both witnesses's testimony to be in the group of people he categorized as *Zinger* witnesses and concluded that their testimony would have been inadmissible hearsay. Defense counsel said "My analysis was that it didn't come in because of *Zinger* and there were hearsay issues obviously, but beyond that, even beyond the hearsay, the *Zinger* issue kept it out."

Finally, with regard to Mitchell's testimony, defense counsel testified that although he could "see there was some argument" that Mitchell's testimony regarding the lights in the car being off at the time of the shooting would have helped Stiggers, he did not recall interviewing Mitchell or making a strategic decision to not interview her. Defense counsel testified that he cross-examined every witness that came near the vehicle regarding the facets of the vehicle, including the surviving witness, Newsome. Defense counsel further testified that there "was a huge amount of discrepancies" in the testimony from witnesses regarding whether the lights were on or off and that he cross-examined every witness.

Here, Stiggers fails to substantiate his claim that counsel was ineffective based on the failure to interview or call the "Jason" witnesses. Stiggers has failed to meet his burden under the first prong of *Strickland* because he has not demonstrated that his counsel's performance fell below an objective standard of reasonableness. Additionally, Stiggers has failed to demonstrate

that the "Jason" testimony would have been admissible hearsay and makes conclusory allegations that it may have fit under an exception to hearsay. Further, the record supports that defense counsel's decision to not interview or call the witnesses was based on reasonable professional judgment. The testimony was inadmissible pursuant to *Zinger*, as it did no more than create an inference or conjecture as to "Jason's" involvement, the testimony was hearsay, and Stiggers failed to demonstrate that it was admissible. Nor has Stiggers met the second prong under *Strickland* because he has failed to demonstrate that he was prejudiced by defense counsel's failure to interview the witnesses. Stiggers must do more than allege prejudice; he must demonstrate it with facts. *Walton v. State*, 2013 Ark. 254 (per curiam). Here, Stiggers provides no evidence that he suffered any prejudice as a result of counsel's failure to call the "Jason" witnesses. We find no merit in Stiggers's claim regarding Pride, Donley, or Johnson.

Finally, with regard to Mitchell's testimony, as discussed above, our law requires that Stiggers name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. *Moten v. State*, *supra*. The objective in reviewing an assertion of ineffective assistance of counsel concerning the failure to call certain witnesses is to determine whether this failure resulted in actual prejudice that denied the petitioner a fair trial. *Woody v. State*, 2009 Ark. 413 (per curiam). In order to demonstrate prejudice, Stiggers must establish that there was a reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. *Id*.

While Stiggers claims that Mitchell's testimony regarding the vehicle would have discredited Newsome's testimony, defense counsel testified that he cross-examined every

witness that came into contact with the vehicle. Based on the record, we are not persuaded that had defense counsel interviewed and called Mitchell as a witness regarding the lights of the car, the outcome of the trial would have been different.

Stiggers simply did not provide any support for his conclusory claims that counsel was ineffective and made no showing that counsel committed any specific error that prejudiced the defense. *See Johnson v. State*, 325 Ark. 44, 49, 924 S.W.2d 233, 236 (1996) ("[T]he fact that there was a witness or witnesses that could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness."). In reviewing the record before us, we conclude that Stiggers has not met his burden.

Based on the discussion above, we do not find that the circuit court erred.

Affirmed.

*Ronald L. Davis, Jr. Law Firm, PLLC*, by: *Ronald L. Davis, Jr.*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Nicana C. Sherman*, Ass't Att'y Gen., for appellee.