

Cite as 2016 Ark. 98

# SUPREME COURT OF ARKANSAS

No. CR–15–324

| | | |
|---|---|---|
| DAVID VAN WINKLE | | **Opinion Delivered** March 10, 2016 |
| | APPELLANT | |
| V. | | APPEAL FROM THE POLK COUNTY CIRCUIT COURT [NO. CR–2011-137] |
| STATE OF ARKANSAS | | HONORABLE JERRY RYAN, JUDGE |
| | APPELLEE | |
| | | <u>AFFIRMED</u>. |

**PAUL E. DANIELSON, Associate Justice**

Appellant David Van Winkle was convicted in the Polk County Circuit Court of kidnapping, aggravated residential burglary, first-degree stalking, third-degree battery, first-degree assault, and first-degree terroristic threatening. He was sentenced to a total of fifty-two years' imprisonment, which included a twelve-year firearm enhancement. The Arkansas Court of Appeals affirmed. *Van Winkle v. State*, 2014 Ark. App. 591, 445 S.W.3d 542. Van Winkle subsequently filed a petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1 (2015). The circuit court denied the petition without a hearing. Van Winkle now appeals, arguing four points in support of reversal: (1) that his trial counsel was ineffective for failing to present his only viable defense, which is that he was actually innocent; (2) that his trial counsel was ineffective for failing to move for a change of venue; (3) that his sentence for employing a firearm in the commission of an offense is void as both

SLIP OPINION

structural error and ineffective assistance of trial counsel; and (4) that the circuit court erred in denying his request for a hearing. We affirm the denial of postconviction relief.

In order to assess Van Winkle's ineffective-assistance arguments, some discussion of the underlying facts is necessary. Van Winkle was a dentist practicing in Mena; the victim in this case, M.O., was one of his patients. According to her testimony, Van Winkle extracted two of her teeth and gave her a prescription for hydrocodone. She was concerned about the prescription because she had a history of drug addiction and was participating in drug court at the time. M.O.'s use of the hydrocodone "start[ed] to get out of hand" after the first extraction. She and Van Winkle discussed hiding pills from her probation officer, and he offered to give her refills as needed in order to ensure that her "pill count" was acceptable. After the second extraction, Van Winkle told M.O. that her probation officer had come by his office to look at her file. The probation officer had also asked to see Van Winkle's ledger, and Van Winkle offered to meet with M.O. in person to discuss that. They met once at M.O.'s home and three times at Van Winkle's home in order to get their "stories straight."

On the last occasion, Van Winkle asked M.O. how important it was that her probation officer not see the real ledger. She responded that it was "pretty damned important," and he wondered "what would [she] be willing to do in order to keep that from happening." Van Winkle told M.O. that he would make sure that she never saw her husband or her child again and that she would go to prison for a really long time if she did not give him a couple hours of her time. He then forced her to perform oral sex on him.

SLIP OPINION

A week later, M.O. called Van Winkle's office and obtained another hydrocodone refill from his staff. Van Winkle sent M.O. several text messages that night while she was at work, inquiring about her pain and making arrangements for future refills. M.O. testified that she left work at approximately 12:30 a.m., gave a coworker a ride home, and then drove to her home in Hatfield. She walked in her front door and immediately went to turn on a light that she usually left on while she was at work. She then heard a bedroom door creak and turned around to see Van Winkle standing there, pointing a pistol at her. He tackled her to the ground, wrestled her arms behind her, zip tied her wrists behind her back, and forced her face-down over an ottoman. M.O. stated that she was able to flip over on her back and break the zip ties. She started "scratching and fighting" and begged him to wear a condom. Van Winkle pulled a screwdriver out of his back pocket and hit her over the eye with it. He told her to be still if she ever wanted to see her little boy again. She said that she would do whatever he wanted, and he replied, "I know you will." He zip tied her wrists again and placed a piece of duct tape over her mouth. He then pulled her up by her shirt collar and told her that they were "going to take a little walk." When he opened the door, M.O. was able to break free and run to a neighbor's home.

The neighbor called 911. M.O.'s husband also contacted law enforcement. He had been in Lowell at the time and was on the phone with M.O. as she drove home from work. He heard her scream in fright shortly after she arrived home, and he then heard what sounded like her phone hitting the floor before the call ended. When law enforcement arrived on the scene, they observed Van Winkle's truck parked off the road, approximately 100 yards from

M.O.'s home. They also saw Van Winkle walking quickly toward his truck, coming from the direction of M.O.'s home; he was carrying a gun in his left hand. Van Winkle did not respond to initial commands to drop his weapon and get on the ground, but he eventually complied and was taken into custody. The gun was loaded.

Police conducted a search incident to arrest and found a screwdriver in Van Winkle's right back pocket and two pieces of rope in his left back pocket. Law enforcement also responded to the neighbor's home, where they found M.O. She was hysterical, her clothing was in disarray, and she had zip ties on both wrists. There were signs of forced entry at M.O.'s home, including removed window screens and pry marks on the front and back doors. Inside her home, police found her cell phone underneath the couch, one zip tie, a roll of pennies wrapped in duct tape, and signs of a scuffle, including overturned furniture. A piece of duct tape was found in M.O.'s yard, between her home and her neighbor's home, and a roll of duct tape was recovered from Van Winkle's residence. In Van Winkle's truck, police found a cell phone that had been taken apart and a pair of zip ties.

Van Winkle was charged with kidnapping, aggravated residential burglary, first-degree stalking, second-degree battery, aggravated assault, and first-degree terroristic threatening. The jury convicted him on all charges, reducing the second-degree-battery charge to third degree and reducing the aggravated-assault charge to first degree. The jury also found that Van Winkle had used a firearm in the commission of all offenses except for the battery; it imposed a twelve-year sentence enhancement for his use of a firearm in the commission of the kidnapping. The twelve-year firearm enhancement and the forty-year sentence for

aggravated residential burglary were ordered to run consecutively, for a total of fifty-two years' imprisonment. On appeal, Van Winkle challenged the sufficiency of the evidence supporting four of his six convictions: kidnapping, aggravated residential burglary, first-degree stalking, and third-degree battery. *Van Winkle*, 2014 Ark. App. 591, 445 S.W.3d 542. The court of appeals concluded that each of the challenged convictions was supported by substantial evidence. *Id.*

On January 15, 2015, Van Winkle filed the instant Rule 37 petition, which raised three issues. First, he argued that he was physically incapable of committing the offenses because he is legally blind without his glasses, deaf without his hearing aids, and has a debilitating back ailment; thus, he contended, his trial counsel was ineffective for failing to present an actual-innocence defense. Second, he argued that his trial counsel was ineffective for failing to file a motion for change of venue because extensive pretrial publicity prevented him from receiving a fair trial in either Polk or Montgomery County. Third, he argued that his trial counsel was ineffective for failing to object to the jury instruction concerning the firearm enhancement, as it did not require proof beyond a reasonable doubt. Van Winkle further contended that the failure to properly instruct the jury was structural error rendering his sentence on the firearm enhancement void. The circuit court issued a letter opinion on February 12, 2015, finding that Van Winkle was entitled to no relief and that a hearing would be unnecessary. The court entered its order denying Van Winkle's Rule 37 petition on February 18, 2015. In short, the court found that the first two issues concerned matters of

trial strategy, not ineffective assistance of counsel, and that the third issue concerned a trial error that could have been addressed on direct appeal. Van Winkle now appeals.

This court does not reverse a denial of postconviction relief unless the circuit court's findings are clearly erroneous. *See, e.g.*, *Beverage v. State*, 2015 Ark. 112, 458 S.W.3d 243. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *See id.* In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *See id.*

On review of claims of ineffective assistance of counsel, this court follows the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See, e.g.*, *Taylor v. State*, 2015 Ark. 339, 470 S.W.3d 271. Under that two-prong analysis, to prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *See id.* The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Sherman v. State*, 2014 Ark. 474, at 2, 448 S.W.3d 704, 708 (per curiam) (quoting *Strickland*, 466 U.S. at 686).

To satisfy the first prong of the *Strickland* test, the petitioner must show that counsel's performance was deficient. *See, e.g.*, *Taylor*, 2015 Ark. 339, 470 S.W.3d 271. To meet this requirement, a postconviction petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth

Amendment to the United States Constitution. *See id.* There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and a petitioner has the burden of overcoming this presumption by identifying specific acts or omissions of counsel, which, when viewed from counsel's perspective, could not have been the result of reasonable professional judgment. *See id.*

In order to meet the second prong of the test, a claimant must show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *See id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *See id.* The language, "the outcome of the trial," refers not only to the finding of guilt or innocence, but also to possible prejudice in the sentencing. *See id.* at 5, 470 S.W.3d at 275 (citing *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006)).

Unless a petitioner under Rule 37 makes both required showings under the *Strickland* analysis, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *See, e.g.*, *Anderson v. State*, 2015 Ark. 18, 454 S.W.3d 212 (per curiam). There is, therefore, no reason for a court deciding an ineffective-assistance claim to address both components of the inquiry if the petitioner fails to make a sufficient showing on one. *See id.*

### I. *Actual-Innocence Defense*

For his first point on appeal, Van Winkle maintains that his trial counsel was ineffective for failing to pursue an actual-innocence defense. The crux of his argument is that he was

physically incapable of committing the offenses as M.O. described them. First, he points out that he is legally blind without glasses and that he did not have his glasses when he was arrested; they were later found at his home. He submits that his trial counsel should have elicited the testimony of an optometrist, who would have stated that Van Winkle could not have driven from his home in Mena to M.O.'s home in Hatfield at night without his glasses. Second, he notes that he is almost completely deaf without hearing aids and that he did not have his hearing aids when he was arrested; as with his glasses, they were later found at his home. He argues that his trial counsel should have called his employees and others who would have testified that he would not have been able to converse with M.O. during the commission of the crimes as she said he did. Third, he asserts that he has a well-documented back problem, which required him to wear a back brace at work and which is so debilitating that he often cannot bend over to tie his own shoes. He maintains that his trial counsel should have called his personal chiropractor to testify that he would have been physically incapable of tackling M.O. and wrestling her arms behind her back as she described.

Relying on these physical ailments, Van Winkle accuses his trial counsel of failing to present an alternative theory of the case—specifically, that he was framed by M.O. and her husband and that the police overlooked this possibility in a rush to judgment. In support of this theory, he points out that police made no attempt to verify that M.O.'s husband was actually out of town at the time of the crimes, particularly by obtaining cell-tower records. He also points out that police never fingerprinted his truck in order to determine whether

SLIP OPINION

someone else might have driven him to Hatfield that night, which would have explained how he got there without his glasses.

The primary problem with Van Winkle's argument is that his trial counsel did, in fact, present an actual-innocence defense. A review of the trial record reveals that this was the main theory of the case advanced by the defense, although there were also references to a mental defect arising from a prior head injury. The record is replete with instances of trial counsel eliciting testimony to support the theory that Van Winkle was actually innocent of these charges, that he was set up by M.O. and her husband, and that law enforcement conducted an incomplete investigation. By way of example, the defense called several witnesses to testify about Van Winkle's physical ailments. His parents both testified about his poor eyesight. His father stated that he cannot drive without his glasses, and his mother stated that he is legally blind without them. Several of Van Winkle's employees testified about his back problem, his need for a back brace, and his inability to tie his own shoes. Van Winkle himself testified that he never leaves home without his glasses or hearing aids, as he cannot go anywhere without them. M.O. was also asked if she remembered whether Van Winkle was wearing glasses at the time of the crimes.

In addition, trial counsel questioned M.O. extensively about how she was able to break two sets of zip ties. Her husband was also questioned about the fact that he was never asked to give a statement and was never asked to prove, by way of cell-phone records, that he was in Lowell at the time of the crimes. Furthermore, trial counsel questioned the sheriff extensively about his investigation in this case, specifically inquiring about the possibility that

a lack of investigation could create a false impression. In particular, the defense focused on law enforcement's failure to take a statement from M.O.'s husband, their failure to investigate the fact that Van Winkle had apparently driven without his glasses, their failure to request fingerprint and DNA analysis on certain pieces of evidence, and their failure to explain how they obtained the key to Van Winkle's truck.

Thus, it is clear that Van Winkle's counsel pursued an actual–innocence defense at trial—precisely the one that Van Winkle now advances. As such, Van Winkle has not established that his trial counsel's performance was deficient under *Strickland*. Even if trial counsel had not pursued this theory, it is well settled that trial counsel's decisions regarding what theory of the case to pursue represent the epitome of trial strategy. *See, e.g.*, *Decay v. State*, 2014 Ark. 387, 441 S.W.3d 899. When a decision by trial counsel is a matter of trial tactics or strategy and that decision is supported by reasonable professional judgment, then such a decision is not a proper basis for relief under Rule 37. *See id*. Van Winkle has failed to overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *See Taylor*, 2015 Ark. 339, 470 S.W.3d 271.

To the extent that Van Winkle challenges his trial counsel's failure to call particular witnesses in support of his actual–innocence defense, such as his optometrist and his chiropractor, his argument is meritless. The decision of whether to call a witness is generally a matter of trial strategy that is outside the purview of Rule 37. *See, e.g.*, *Nelson v. State*, 344 Ark. 407, 39 S.W.3d 791 (2001) (per curiam). When assessing an attorney's decision to not call a particular witness, it must be taken into account that the decision is largely a matter of

10

professional judgment that experienced advocates could endlessly debate, and the fact that there was a witness or witnesses who could have offered testimony beneficial to the defense is not in and of itself proof of counsel's ineffectiveness. *See id.* The omission of a witness when his or her testimony is cumulative does not deprive the defense of vital evidence. *See, e.g.*, *Rasul v. State*, 2015 Ark. 118, 458 S.W.3d 722.

Here, the testimony of the optometrist and the chiropractor would have been cumulative to other evidence, as set out above. It was well established at trial that Van Winkle had poor eyesight, poor hearing, and a back problem. But the jury discounted his theory of the case, possibly rejecting the implication that he owned only one pair of glasses and one set of hearing aids. In short, Van Winkle's actual-innocence defense turned on a credibility determination, and it is the sole province of the jury to determine the credibility of witnesses and the weight and value of their testimony. *See, e.g.*, *Nelson*, 344 Ark. 407, 39 S.W.3d 791. There is no indication that the jury would have resolved this credibility determination in Van Winkle's favor; therefore, he has failed to demonstrate that the outcome of the trial would have been different had his attorney called the optometrist and the chiropractor to testify. *See id.*

In any event, Van Winkle concedes that, under existing case law, a claim of actual innocence is considered a direct attack on the judgment and a challenge to the sufficiency of the evidence that is not cognizable in a Rule 37 proceeding. *See, e.g.*, *Scott v. State*, 2012 Ark. 199, 406 S.W.3d 1. Nonetheless, Van Winkle contends that we should overrule our precedent on this point. He suggests that (1) actual innocence is a constitutional claim and,

11

as such, is cognizable under Rule 37.1(a)(i), and (2) the denial of actual innocence as a constitutional defense to a conviction violates article 2, section 13 of the Arkansas Constitution ("Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase; completely, and without denial; promptly and without delay; conformably to the laws.").

Even if this court were inclined to revisit this issue, we decline to do so in this particular case. As stated above, Van Winkle was afforded the actual–innocence defense he now claims his trial counsel was ineffective for failing to pursue. Therefore, even if a claim of actual innocence were cognizable in a Rule 37 proceeding, Van Winkle has failed to demonstrate that his counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Accordingly, he would not be entitled to relief.

## II. *Change-of-Venue Motion*

For his second point on appeal, Van Winkle asserts that his trial counsel was ineffective for failing to file a motion seeking a change of venue. He maintains that extensive pretrial publicity prevented him from receiving a fair trial in Polk County or neighboring Montgomery County. Specifically, he alleges that two newspapers in the judicial district printed numerous articles, immediately after his arrest and continuing until his trial two years later, some of which included a "staged" booking photograph depicting him with no shirt, and some of which inaccurately reported that he had been arrested in M.O.'s home. Van

Winkle contends that this prejudicial and inaccurate publicity would have made potential jurors form a biased opinion that the State's case was stronger than it actually was. Thus, he argues, his trial counsel should have attempted to move the case outside of the judicial district.

The decision of whether to seek a change of venue is largely a matter of trial strategy and is therefore not an issue to be debated under our postconviction rule. *See, e.g.*, *Huls v. State*, 301 Ark. 572, 785 S.W.2d 467 (1990) (per curiam). Here, trial counsel was clearly aware of the pretrial publicity and made multiple references to it at trial. The decision to not seek a change of venue was a strategic one. As the State points out, the defense chose instead to try to capitalize on Van Winkle's reputation in the community. Trial counsel called several character witnesses, including a pastor, who all stated that they had lived in the community for years and knew Van Winkle as a truthful person. Accordingly, Van Winkle has failed to overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *See, e.g.*, *Taylor*, 2015 Ark. 339, 470 S.W.3d 271.

Furthermore, to establish that the failure to seek a change in venue amounted to ineffective assistance of counsel, a petitioner must offer some basis on which to conclude that an impartial jury was not empaneled. *See, e.g.*, *Huls*, 301 Ark. 572, 785 S.W.2d 467. Van Winkle has failed to do so. He does not specify "any conduct of a juror from which it can be ascertained that the juror was unprepared to afford him an impartial hearing of the evidence." *Id*. at 580, 785 S.W.2d at 471. Consequently, he has failed to demonstrate prejudice as required by the second prong of *Strickland*. It is well settled that jurors are presumed unbiased, and the burden of demonstrating actual bias is on the petitioner. *See id*.

13

Van Winkle's assertion that potential jurors might have been misled about the strength of the State's evidence is not sufficient to overcome the presumption. A defendant is not entitled to a jury totally ignorant of the facts of a case, and he is not entitled to a perfect trial, only a fair one. *See id*.

### III. *Jury Instruction Concerning Firearm Enhancement*

For his third point on appeal, Van Winkle contends that his twelve-year sentence for employing a firearm in the commission of a felony, imposed pursuant to Arkansas Code Annotated section 16-90-120, is void as both ineffective assistance of counsel and structural error. He asserts that the jury was improperly instructed on the firearm enhancement because it was not told that the State was required to prove beyond a reasonable doubt that he had used a firearm. By way of explanation, the jury was apparently not given the model instruction on the firearm enhancement, which requires proof beyond a reasonable doubt; instead, each of the verdict forms on the charged offenses included a line at the bottom asking the jury to "indicate, whether he used a firearm in the commission of the offense." It is clear that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000). According to Van Winkle, the trial court committed structural error by failing to properly instruct the jury, and his trial counsel was ineffective for failing to object at the first opportunity.

Van Winkle's structural-error argument is not preserved for appellate review. We disagree with the State's assertion that Van Winkle has changed his argument on appeal;

14

however, the circuit court did not rule on Van Winkle's structural-error argument at all in denying his petition for postconviction relief. It found only that his trial counsel was not ineffective for failing to object. The failure to obtain a ruling on an issue at the circuit-court level, including a constitutional issue, precludes review on appeal. *See, e.g.*, *Huddleston v. State*, 347 Ark. 226, 61 S.W.3d 163 (2001).

This leaves Van Winkle's ineffective-assistance claim. We agree that trial counsel's failure to object to the absence of a proper jury instruction constituted deficient performance under *Strickland*. It can hardly be said that the failure to so object, even when viewed from counsel's perspective, could have been the result of reasonable professional judgment. *See, e.g.*, *Taylor*, 2015 Ark. 339, 470 S.W.3d 271. However, *Strickland* still requires a showing of prejudice. Contrary to Van Winkle's contention, the failure to properly instruct the jury on the State's burden of proving the firearm enhancement is not a fundamental error that renders the judgment of conviction void and precludes harmless-error analysis. *See Washington v. Recuenco*, 548 U.S. 212 (2006). Van Winkle has failed to meet his burden on this second prong of the *Strickland* analysis.

M.O. testified that Van Winkle pointed a pistol at her during the commission of the offenses. He was carrying a loaded gun when he was arrested immediately afterward. Moreover, the jury was instructed that, in order to sustain the charge of aggravated residential burglary, the State had to prove beyond a reasonable doubt that Van Winkle was armed with a deadly weapon or represented by word or conduct that he was armed with a deadly weapon. That same instruction defined "[d]eadly weapon" as "a firearm." Indeed, the jury found

beyond a reasonable doubt that Van Winkle was guilty of aggravated residential burglary, and it indicated on that same verdict form that he had used a firearm in the commission of the offense. In addition, there is no dispute that the jury was instructed on the general requirement and definition of reasonable doubt and that these instructions were proper. In light of these facts, Van Winkle has not demonstrated that he was prejudiced by his trial counsel's failure to object. Stated differently, there is not a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *See, e.g.*, *Taylor*, 2015 Ark. 339, 470 S.W.3d 271. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial, and we cannot say that such a probability exists here. *See id.*

## IV. *Denial of Evidentiary Hearing*

Finally, Van Winkle maintains that he set forth a prima facie case for relief on each of the grounds set out above and was thus entitled to an evidentiary hearing. Arkansas Rule of Criminal Procedure 37.3 requires an evidentiary hearing in a postconviction proceeding unless the petition and the files and records of the case conclusively show that the petitioner is entitled to no relief. *See, e.g.*, *Beverage*, 2015 Ark. 112, 458 S.W.3d 243. If the petition and record conclusively show that the petitioner is not entitled to relief, the circuit court is required to make written findings to that effect, "specifying any parts of the files, or records that are relied upon to sustain the court's findings." *Id.* (quoting Ark. R. Crim. P. 37.3(a)). Here, for the reasons stated above, the petition and record conclusively showed that Van Winkle was entitled to no relief, and the circuit court made the requisite findings. While Van

Winkle asserts that the ten-page limit for Rule 37 petitions allowed him only to summarize the evidence that he would have presented, we have held that the supporting facts must appear in the petition and that the petitioner cannot rely on the possibility that facts will be elicited from witnesses if a hearing is held. *See, e.g.*, *Watson v. State*, 2014 Ark. 203, 444 S.W.3d 835.

For the above-stated reasons, and considering the totality of the evidence, we hold that the circuit court did not clearly err in denying Van Winkle's petition for postconviction relief without a hearing. *See, e.g.*, *Beverage*, 2015 Ark. 112, 458 S.W.3d 243.

Affirmed.

BAKER and HART, JJ., concur.

**KAREN R. BAKER, Justice, concurring.** Unlike the majority, I do not base any part of my opinion on the circuit court's finding that counsel's actions were a matter of trial strategy. Strategic decisions must be supported by reasonable professional judgment. *See Stiggers v. State*, 2014 Ark. 184, 433 S.W.3d 252. In this case, because there was no hearing, the circuit court had no way to determine whether counsel's actions were based on reasonable professional judgement. Nevertheless, I would affirm the circuit court employing a different analysis.

First, with regard to Van Winkle's claim that his counsel was ineffective for not seeking a change of venue, in his petition, Van Winkle asserted that the press coverage "would have made potential jurors form a biased opinion before trial" and Van Winkle "easily could have presented affidavits from numerous electors and citizens . . . setting out facts making a prima

facie case that defendant could not have received a fair trial." Despite these allegations in his petition, Van Winkle makes bare allegations without factual substantiation to support his venue claim. "Bare assertions of ineffectiveness are not enough and conclusory statements that counsel was ineffective will not sustain a Rule 37 petition. *Anderson v. State*, 2011 Ark. 488, at 5, 385 S.W.3d 783." *Mancia v. State*, 2015 Ark. 115, at 15, 459 S.W.3d 259, 269. Here, Van Winkle has failed to allege that he was prejudiced, or that the jury that heard his case was biased and not impartial.

Second, I agree with the majority that Van Winkle's structural-error argument as to the jury instruction concerning the firearm enhancement is not preserved for review. A freestanding constitutional claim, even if based upon the same trial error as an ineffective-assistance-of-counsel claim, must be raised in the circuit court and preserved for review. *Id.*; *see Norris v. State*, 2013 Ark. 205, at 5, 427 S.W.3d 626, 632; *Beshears v. State*, 340 Ark. 70, 73, 8 S.W.3d 32, 34 (2000).

In sum, because Van Winkle has offered nothing other than conclusory allegations that counsel was deficient for failing to seek a change of venue and has not alleged that he was prejudiced, and because Van Winkle failed to preserve his structural-error argument regarding the jury instruction, I concur with the majority and would affirm the circuit court.

**JOSEPHINE LINKER HART, Justice, concurring.** In his petition for postconviction relief, David Van Winkle contended in part that his defense counsel was ineffective for failing to present, based on objective facts, an alternative theory about what occurred. In reciting those facts, he noted that he was found near the crime scene with his eyes swollen shut and

his own blood on his hands and clothes and also matted in his hair. He stated that his glasses and hearing aids were later found at his residence, thus rendering him blind and deaf at the scene. Further, he stated that he had no memory of how he arrived at the scene. He also asserted that it was later discovered that valuables had been taken from his residence. He further noted that the State did not seek to ascertain the whereabouts of the victim's husband at the time of the crime by examining cell-site location information, and Van Winkle claimed that he had since heard that the victim's husband was in the area that day, which made the husband's trial testimony false. Van Winkle also observed that the State did not examine his vehicle for fingerprints to determine who had driven it to the scene or examine his house for fingerprints to determine who had taken the items from his home.

Van Winkle contended that, based on these facts, defense counsel should have presented an alternative defense that he had been set up by the victim and possibly her husband and others. Van Winkle concluded that it was plausible that someone could have conspired with the victim to go to his house to steal his valuables. While there, they struck him, causing a concussion. They then drove him to the crime scene without his hearing aids and glasses, and afterwards they concocted a story to cover up the burglary of his house. He further observed that the victim had previously committed a residential burglary to obtain prescription pills.

In answer to Van Winkle's theory, the majority concludes that this was, in fact, the defense presented by defense counsel. This reading of the trial record, however, is too generous. While defense counsel did present testimony about Van Winkle's physical

19

disabilities, defense counsel also presented testimony that Van Winkle's loss of memory was the result of him striking his head on a light fixture at work. The majority then strays into a claim that defense counsel's decisions on what theory to present was a matter of trial strategy. However, no hearing was ever held on Van Winkle's postconviction petition. Thus, there is no testimony from defense counsel from which to conclude that defense counsel's decisions were a matter of trial strategy. I caution against holding, without defense counsel's testimony, that defense counsel's decisions were matters of trial strategy. Rather than actually knowing that defense counsel's decisions were matters of trial strategy, the majority essentially speculates, and such speculation could just as well be wrong.

Nevertheless, I concur in the majority's result. Rather than facts, Van Winkle presented in his petition only conclusory allegations in support of his theory that the victim robbed him at his residence, rendered him senseless, drove to the crime scene, and framed him by concocting a story. Thus, Van Winkle failed to demonstrate prejudice by showing that there was a reasonable probability that the fact-finder's decision would have been different absent defense counsel's alleged errors. *See Bowerman v. State*, 2015 Ark. 350, 470 S.W.3d 267 (holding that, where the petitioner alleged that defense counsel should have based the defense on the theory that it was not a robbery but instead a drug deal gone bad and that the victim had staged a robbery, there was no showing that, if counsel had adopted proposed alternate theory of the case, there was a reasonable probability that the jury's decision would have been different).



*John Wesley Hall, Jr.*, *Sarah M. Pourhosseini*, and *John R. Van Winkle*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *David Raupp*, *Christian Harris*, and Vada *Berger*, Ass't Att'ys Gen., for appellee.