STATE of Arkansas *v.* Chad Eugene JONES

CR 95-461                                    907 S.W.2d 674

Supreme Court of Arkansas
Opinion delivered October 9, 1995

Appeal from Pulaski Circuit Court; *Marion Humphrey*, Judge; appeal dismissed.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellant.

*William R. Simpson, Jr.*, Public Defender, by: *C. Joseph Cordi, Jr.*, Deputy Public Defender, for appellee.

DAVID NEWBERN, Justice. Recently we released our opinion in *Jones* v. *State*, CR95-397■, affirming the conviction of Chad Eugene Jones of first-degree murder and second-degree battery. The State has filed a separate appeal arising from the same trial which was the subject of CR95-397. In its appeal brought pursuant to Ark. R. Crim. P. 36.10, the State asks that we declare the Trial Court erred in refusing to permit certain evidence tending to show that Mr. Jones was a member of a street gang known as "The Southwest Kings." Rule 36.10(c) provides in part:

> If the attorney general, on inspecting the trial record, is satisfied that error has been committed to the prejudice of the state, and that the correct and uniform administration of the criminal law requires review by the Supreme Court, he may take the appeal by filing the transcript of the trial record with the clerk of the Supreme Court within (60) days of filing the notice of appeal.

We disagree with the Attorney General's conclusion that the correct and uniform administration of justice requires a review in this case, and we thus dismiss the appeal.

The Trial Court determined that the probative value of some of the evidence about Mr. Jones's membership in a gang was outweighed by the danger of unfair prejudice. The ruling of the Trial Court concerning gang-affiliation testimony turned on a question of relevancy and the balancing test provided in Ark. R. Evid. 403. It was a determination based on the particular facts of this case, and thus we cannot say that the uniform administration of

the criminal law would require a declaration of error even if error were found in the application of Rule 403.

Mr. Jones was one of the individuals charged in the shooting death of Jason Hatcher and the wounding of Tim McGarrity in Sherwood on December 18, 1993. The State produced evidence that on the evening of December 17, 1993, Mr. Hatcher and his friends went to a basketball game at North Little Rock High School. Following the game, the group went to a place called "Fones," which is apparently a dead-end road where teenagers frequently go to "hang out." After spending some time at Fones, the group proceeded to Parkway Music Studio in North Little Rock, where a party was being held.

After leaving the party, Jason Hatcher and his friends proceeded toward Taco Bell in Sherwood, which shares a parking lot with a Harvest Foods store. The testimony showed the group used three separate vehicles and that each vehicle reached the parking lot at close to the same time. The first car to arrive at the parking lot was a white Subaru containing Casey Stalnaker, Tim McGarrity, and Clay Cochran. Mr. Hatcher was a passenger in one of the other vehicles that arrived shortly thereafter.

In the period between the arrival of the white Suburu and the vehicles containing Mr. Hatcher and his other friends, the occupants of the Subaru saw a white low-rider pickup truck parked by the pay phones in front of Harvest Foods. Although it is not entirely clear, it was suggested that the occupants of the pickup, Shan Messer and James Gross, had earlier made "gestures" at Jason Hatcher's group at an intersection. Clay Cochran and Tim McGarrity walked over to Shan Messer and James Gross, and a fight broke out. By this time, the other members of Mr. Hatcher's party had arrived, and a crowd had begun to form around the fracas.

After the fight had begun and the crowd of spectators had formed, a Blue Honda carrying Mr. Jones and others arrived on the scene. With the arrival of the Honda, a series of shots were heard. Although the testimony concerning these events varied, several witnesses testified they saw Mr. Jones standing outside the vehicle and holding an object. Casey Stalnaker, who remained in the Subaru during the incident, testified he saw Mr. Jones with a gun. Mr. Jones was also heard yelling, "I told you not to fuck with the Southwest Kings." Tim McGarrity was wounded in his leg and

Mr. Hatcher suffered a back wound which resulted in his death.

These events gave rise to the information filed against four defendants, including Mr. Jones. Because the State was unable to demonstrate conclusively which defendant shot Tim McGarrity and which shot Jason Hatcher, it proceeded on an accomplice theory against all four defendants. The State later amended its information to include a charge of engaging in violent criminal group activity against each of the defendants.

Prior to the trial, Mr. Jones moved *in limine* to prevent the State from introducing evidence of Mr. Jones's alleged affiliation with the Southwest Kings. Subsequently, the State proffered the testimony of Mr. Jones's former girlfriend and other youths who stated that they either knew of Mr. Jones's membership in the gang or heard him proclaim his membership in a threatening manner at the party at Parkway Music Studio. At the conclusion of the proffered testimony, the Trial Court refused to admit gang-affiliation evidence and said, "this testimony, whatever, would be more prejudicial than probative. And I think there may be even some problems with the factual basis of this as well." The ruling excluded the evidence of activity earlier in the evening suggesting Mr. Jones's gang affiliation but permitted reference to Mr. Jones's alleged statement about the Southwest Kings which occurred on the parking lot.

In its argument that the appeal should be allowed, the State cites a case in which we addressed, pursuant to Rule 36.10, the State's cross-appeal concerning whether a dying declaration of a small child should have been admitted in evidence. *Boone* v. *State*, 282 Ark. 274, 668 S.W.2d 17 (1984). The Trial Court had suppressed the child's statement because "no one told him he was going to die." We did not discuss in detail the propriety of the appeal. We concluded the child's statement, made shortly before he died, about having been beaten by his mother's fiance should not have been suppressed because there was evidence he suspected his impending death.

Also cited is *State* v. *Browning*, 206 Ark. 791, 178 S.W.2d 77 (1944), in which we entertained the State's appeal of questions concerning admissibility of a confession of one accused of a crime. One of the questions in the *Browning* case was whether it was proper for the Trial Court to exclude a confession obtained

by police authorities prior to the arraignment of the accused. We held the exclusion to have been improper.

In both cases the Trial Courts and we were concerned with direct, technical application of evidence rules. Neither presented the sort of balancing issue present here in the application of Rule 403 which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In the case now before us, the Trial Court made no sweeping decision about the admissibility or inadmissibility of evidence of gang membership of a criminal defendant. That is obvious from the fact that not all references to the Southwest Kings were excluded. Nor was there a technical interpretation of an evidence rule. Any decision we might make in response to the State's appeal would have to address the Trial Court's discretion in excluding evidence he apparently thought might result in unfair prejudice.

In *State v. Harris*, 315 Ark. 595, 868 S.W.2d 488 (1994), the State attempted to appeal from a decision that a Department of Human Services food stamps fraud investigator was a law enforcement officer required to advise a suspect, in accordance with Arkansas Rules of Criminal Procedure 2.3, that she was free to leave his office after having been invited for an interview. We dismissed the appeal and said:

> In short, an interpretation of the Criminal Rules with widespread ramifications is simply not at issue in this case. We have said the following in connection with a prior decision on the correct and uniform application of the law:

> Where the trial court acts within its discretion after making an evidentiary decision based on the facts on hand or even a mixed question of law and fact, this court will not accept an appeal under Ark. R. Crim P. 36.10.

*State v. Mazur*, 312 Ark. 121, 123, 847 S.W.2d 715, 716 (1993); *quoting State v. Edwards*, 310 Ark. 516, 838 S.W.2d 356 (1992). Such is the situation before us now in this appeal.

■ The same is true here, therefore, we dismiss the State's appeal.

Appeal dismissed.

GLAZE and CORBIN, JJ., dissent.

TOM GLAZE, Justice, dissenting. In this case, the trial judge *rejected* the state's evidence showing the defendant's gang affiliation with the Southwest Kings. The state brings this appeal in its efforts to obtain this court's decision on whether the trial judge erred in excluding such gang-affiliation evidence. It seeks a decision because other cases are pending involving these same facts and issue. The state is permitted to appeal when the attorney general is satisfied that error has been committed to the prejudice of the state, and that the correct and uniform administration of the criminal law requires review by the court. Ark. R. Crim. P. 36.10. The majority court dismisses the state's appeal, stating that the trial court made no "sweeping decision" about the admissibility or inadmissibility of evidence of gang membership of a criminal defendant.

This court has recognized that a defendant's affiliation with a group may show "motive, and hence the doing of the criminal act, the identity of its actor, or his intention." *Smith* v. *State*, 310 Ark. 247, 837 S.W.2d 279 (1992) [quoting *Snell* v. *State*, 290 Ark. 503, 721 S.W.2d 628 (1986), cert. denied, 484 U.S. 872 (1987), and 490 U.S. 1075 (1989)]. From my research I can find no Arkansas case, except the one before us now, where a trial court had actually *excluded* gang-affiliated evidence in a felony or homicide trial after a trial court, pursuant to A.R.E. Rule 403, weighed the probative value of such evidence against its prejudicial value.

In my view, the legal issue sought to be ruled on is one which will reoccur, but which this court will never be able to reach, unless we do so in a state appeal like the one before us now. The question needing an answer here is what are the relevant factors for a trial court to consider under A.R.E. Rule 403 when admitting or excluding gang-affiliation evidence. I would take the state's appeal and decide the issue.

CORBIN, J., joins this dissent.