Cite as 2024 Ark. App. 57

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CR-22-717

| | | |
|---|---|---|
| BRYAN PORRAS | APPELLANT | Opinion Delivered January 31, 2024 |
| | | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT, [NO. 66FCR-17-65] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE R. GUNNER DELAY, JUDGE |
| | | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Appellant Bryan Porras appeals the Sebastian County Circuit Court's order denying his petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure (2023). Porras argues that the circuit court erred in denying his Rule 37 petition and claims that his trial counsel provided ineffective assistance of counsel by (1) failing to move for directed verdict on the basis of insufficient codefendant corroboration; (2) failing to object to Detective Anthony Parkinson's testimony on hearsay or confrontation grounds; (3) failing to investigate and present the testimony of three witnesses; (4) failing to request a second-degree-murder instruction; (5) opening the door to damaging testimony by Detective Parkinson; (6) failing to object to this testimony by Detective Parkinson on hearsay or

confrontation grounds; (7) failing to object to the "journal"; and (8) relying on several pieces of evidence in finding a lack of prejudice. We affirm.

I. *Facts and Procedural History*

A. Direct Appeal

On January 17, 2017, Porras was charged by felony information—and as a habitual offender—with murder in the first degree; terroristic act; and possession of firearms by certain persons. The State subsequently filed three amended informations, ultimately charging him as a habitual offender with murder in the first degree; one count of terroristic act, Class Y felony; six counts of terroristic act, Class B felony; and possession of firearms by certain persons. The State sought enhanced habitual-offender sentences on all charges save for the firearm-possession count, pursuant to Ark. Code Ann. § 16-90-120 (Repl. 2016).

Porras's jury trial occurred on November 13–15, 2017, during which the following evidence was presented. Porras's charges arose from a gang-related shooting that occurred in Fort Smith on the night of January 14, 2017. Porras and three codefendants—Alberto Chavez, Ryan Oxford, and Jorge Chirinos—were members of a gang called Slangez 96.[1] The eighteen-year-old deceased victim, Justin Lopez, and Trey Miller were members of a rival gang called Clout Boyz. Lopez was killed when a barrage of gunfire from two assault rifles hit the camper trailer where he was visiting Miller.

---

[1]The trial court granted Porras's motion to sever. *See* Trial Record, *Porras v. State*, case No. CR-18-149, at 173. Reliance on the trial record in a Rule 37 appeal is permitted. *See Drymon v. State*, 327 Ark. 375, 938 S.W.2d 825 (1997) (per curiam).

Porras, Chavez, Oxford, and Chirinos were together at a wedding party at the Fort Smith Convention Center on the night of the incident. All four men were wearing purple bandannas around their necks. Jamie Aceves Garcia testified that Porras approached him and demanded to know where the Clout Boyz were "because he was having problems with them." Porras threatened to shoot Garcia if he did not tell him where they were. Garcia knew the members of the Clout Boyz gang; but, as he told Porras, he did not know where they were. Thereafter, Garcia saw Porras and the other three codefendants leave the party and return about an hour later in a four-door gray car.

At the time of the incident, Miller was living in a camper trailer located in the backyard of his grandparents' home. Around 10:00 p.m., Miller and Lopez were alone and sitting at the kitchen table inside the trailer when, through the open door of the trailer, they noticed a car driving into the alley behind Miller's grandparents' home. After the two heard the backyard gate being opened, Lopez grabbed a shotgun and called out to an approaching figure. At that point, the person yelled, "Shoot, shoot, shoot," and numerous rounds were fired from assault rifles into the trailer. Miller stated that as the shooters were leaving, he heard "whooping and hollering" like they were "celebrating." Lopez was killed by a bullet shot from an AR-15 that entered the back of his skull and fragmented. Miller was not injured. There were cartridge casings located at the crime scene, and twenty-eight bullet-impact points were found inside the trailer.

Officers were dispatched to the scene at 10:31 p.m. They identified the codefendants as suspects and obtained warrants to search Porras's and Oxford's apartments. The officers

3

recovered an AK-47 semiautomatic assault rifle, an AR-15 semiautomatic assault rifle, approximately four hundred rounds of ammunition, and a purple bandanna from Oxford's apartment. They recovered a purple bandanna, two "Jason" Halloween masks, a composition notebook/journal, an AR-15 semiautomatic assault rifle, and a quantity of .223-caliber ammunition from Porras's apartment. The AR-15 and ammunition were hidden behind a water heater in the bedroom closet that contained male clothing, while the bandanna was discovered behind a freezer. Ballistic comparison of the bullet fragment recovered during Lopez's autopsy revealed that it was fired from the AR-15 seized during the search of Porras's apartment. Shell casings found at the crime scene were also linked to the rifles seized. All of the .223-caliber shell casings found at the crime scene were ejected from the AR-15, and all of the recovered 76.2 x 39mm shell casings were ejected from the AK-47.

The composition notebook/journal seized from Porras's apartment contained drawings and rap lyrics referencing Slangez. A video recovered from Porras's cell phone showed him with the codefendants acting out a rap song referencing "Slangez 96" and "Clout Boyz Killa" and displaying firearms similar to those fired at the scene. Detective Chris George, who was assigned to the vice narcotics unit, tracked gang activity in Fort Smith. He testified that Slangez 96 and Clout Boyz were rival gangs, both with a presence in Fort Smith, and that Slangez 96 members wore purple to show their affiliation.

Chirinos testified that he, Porras, Oxford, and Chavez went to the wedding party on the night of the shooting. While there, Porras asked Garcia where the Clout Boyz were. The four codefendants left the party after Porras learned that members of the Clout Boyz were

in Miller's trailer. As Porras was driving to the trailer, he instructed the others to put on masks. Porras used a bandanna to cover his nose and mouth and wore a hoodie. He drove through the alley, stopped the car, and approached the trailer on foot. Porras was armed with the AK-47 and Chavez with the AR-15. Chirinos testified that when they heard sounds coming from inside the trailer, Porras came back through the gate yelling "shoot, shoot," and Porras and Chavez started shooting until they had emptied their magazines. After they left the crime scene, they took the rifles to Porras's apartment then went back to the wedding party until Porras's girlfriend called for him to pick her up from work.

The Sebastian County jury convicted Porras of one count of first-degree murder and two counts of committing a terroristic act and enhanced his sentence for using a firearm in the commission of the crimes. He was sentenced as a habitual offender to an aggregate term of seventy-three years' imprisonment pursuant to a sentencing order filed on November 21, 2017. Porras filed a timely notice of appeal on November 22.

On direct appeal, Porras claimed (1) that the State failed to present sufficient evidence, independent of an accomplice's testimony, to support his convictions, and (2) that by finding trial counsel had opened the door to a line of questioning, the circuit court denied him the right to confront witnesses against him. *Porras v. State*, 2018 Ark. App. 592, at 1. We held that Porras's challenge to the sufficiency of the evidence was not preserved for appellate review. *Id.* at 1–4. As to his second claim, we held that Porras received the relief he requested when he objected. *Id.* at 8. Porras argued that Detective Parkinson could not testify that the codefendants told him Porras was with them at the crime scene. *Id.* Because Detective

Parkinson testified that each of the codefendants confessed to being at the crime scene, we held that he had received the relief he requested and denied the claim. *Id.* This court affirmed Porras's conviction in an opinion issued on December 5, 2018, and rehearing was denied on January 19, 2019. *See Porras, supra.* The mandate was issued on January 16 and affirmed on January 24.

### B. Rule 37 Petition and Amended Petition

Porras filed a timely pro se petition for postconviction relief pursuant to Rule 37.1 in the Sebastian County Circuit Court on March 20, 2019. *See* Ark. R. Crim. P. 37 (2023). The State filed a response on March 26 and an amended response on April 8, and Porras filed a reply to the response on April 10. Porras subsequently sought and obtained leave from the circuit court to file an amended Rule 37 petition. On January 4, 2020, Porras filed an amended Rule 37 petition alleging eight separate reasons that trial counsel provided ineffective assistance of counsel.[2] The State filed a response on January 21. After several continuances were granted, in part related to the COVID pandemic, an evidentiary hearing on Porras's Rule 37 petition was held on May 6, 2022.

Rigoberto Pena Canjura testified that Porras was not involved in the charged acts on January 14, 2017, because Porras was on Xbox Live playing a video game with him around

---

[2]On appeal, Porras abandons the ineffective-assistance claims raised in his Rule 37 petition alleging that counsel was ineffective by failing to object to Detective Parkinson's testimony attributable to Guadalupe Chavez Rodriquez on hearsay and confrontation grounds and by failing to properly cross-examine and impeach accomplice Chirinos's testimony. *See Stewart v. State,* 2014 Ark. 419, at 4, 443 S.W.3d 538, 542 (per curiam) (noting that "issues raised below but not argued on appeal are considered abandoned").

10:00 p.m. when Canjura heard the shooting down the street from his home. Canjura testified he did not think anything of the sounds of shooting and continued gaming with Porras for another thirty minutes before Porras ended the session. Canjura testified that he and Porras played video games together for about an hour in total. Canjura was incarcerated for a period of years, including when Porras's case was pending and when it went to jury trial.

Codefendant Alberto Chavez testified that Porras was not present when he and the two other codefendants shot up Justin Lopez's trailer. Chavez wrote an affidavit to that effect dated November 7, 2017, and he was prepared to testify to such at Porras's jury trial had he been called. Chavez testified that the shooters were in Ryan Oxford's mother's car at the time of the incident, which was a two-door car. Chavez explained that he implicated Porras in a custodial statement to police only because he was afraid and because he did not want Chirinos—a juvenile at the time—to go through the same things he went through in the justice system as a child. Chavez explained that he, Oxford, and Chirinos committed the charged acts using Oxford's car and then returned to Porras's apartment after the shooting. Chavez explained that they left their weapons at Porras's apartment while they went out and that Oxford retrieved one of the weapons when they got back to Porras's apartment.

Porras introduced evidence showing that on January 14, 2017, Louann Hartley called police to her backyard just near the alleyway where the charged acts occurred. Hartley told police she heard approximately seven gunshots, looked outside, and saw a "light grey 2 door car that she described as a coupe, leave the alleyway south bound."

On July 20, the circuit court entered an order denying Porras's Rule 37 petition. On August 12, Porras filed a timely notice of appeal.

## II. *Standard of Review and Applicable Law*

In *Avery v. State*, we reiterated the standard of review in postconviction-relief cases as follows:

> When reviewing a circuit court's ruling on a petitioner's request for Rule 37.5 relief, this court will not reverse the circuit court's decision granting or denying postconviction relief unless it is clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been made.

> When considering an appeal from a circuit court's denial of postconviction relief on a claim of ineffective assistance of counsel, the sole question presented is whether, based on a totality of the evidence under the standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), the circuit court clearly erred in holding that counsel's performance was not ineffective. In making this determination, we must consider the totality of the evidence.

> The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-pronged standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. A court must indulge in a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.

> Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would

8

have been different absent the errors. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

*Avery v. State*, 2022 Ark. App. 248, at 6–7, 645 S.W.3d 374, 379–80 (quoting *Bauman v. State*, 2021 Ark. App. 58, at 6–7) (internal citations omitted).

III. *Discussion*

A. Failure to Specifically Move for Directed Verdicton
Insufficient Codefendant Corroboration

Regardless of trial counsel's subjective belief about whether he preserved a sufficiency argument as to the lack of corroboration of codefendant Jorge Chirinos's testimony, this court found he did not. *Porras v. State*, 2018 Ark. App. 592, at 4 (holding that "Porras never made a corroboration argument to the circuit court; therefore, that argument is not preserved for our review."). Trial counsel's failure to make this specific argument precluded appellate review on this point, and Porras argues his representation was accordingly deficient. Porras notes that trial counsel argued insufficient corroboration on direct appeal and then filed a petition for rehearing noting his own ineffectiveness in failing to preserve this argument as support. Porras maintains that trial counsel was both objectively deficient and deficient even by his own subjective standards and actions. Porras maintains this error was

9

prejudicial because his conviction would have been dismissed had trial counsel preserved this argument.

Porras argues that at trial, there was no evidence placing him at the scene, identifying him as one of the shooters, or otherwise independently connecting him to the charged act other than the testimony of codefendant Jorge Chirinos. The other evidence showed only that Porras's car may have been involved in the shooting and that a weapon used in the shooting was later found at his home. Porras maintains that this was insufficient evidence to show that he was involved in the shooting. *See Dunn v. State*, 256 Ark. 508, 514, 508 S.W.2d 555, 559 (1974) (finding that under the facts of the case, riding in the same automobile was insufficient corroboration to sustain aggravated-robbery conviction). We are unpersuaded.

As the circuit court found, it was bound by this court's ruling that trial counsel's motion for directed verdict was deficient. *See, e.g.*, *Cloird v. State*, 352 Ark. 190, 194, 99 S.W.3d 419, 422 (2003) (holding that the doctrine of law of the case dictates that a decision made in a prior appeal may not be revisited in a subsequent appeal). To prevail on his ineffective-assistance claim based on counsel's failure to preserve the challenge to the sufficiency of the evidence, Porras was required to demonstrate *Strickland* prejudice by showing that, had the issue been preserved, the appellate court would have reversed his conviction. *See, e.g.*, *Smith v. State*, 2010 Ark. 137, at 11, 361 S.W.3d 840, 848 (per curiam). The record before us supports the circuit court's finding that Porras failed to establish *Strickland* prejudice.

To determine whether Porras's claim has merit, we apply the standard used when sufficiency claims are raised on direct appeal. On direct appeal, this court will affirm the conviction if there is substantial evidence to support it, direct or circumstantial. *Starling v. State*, 2016 Ark. 20, at 3, 480 S.W.3d 158, 160. In determining whether there is substantial evidence, the court views the evidence in the light most favorable to the State, considering only the evidence that supports the guilty verdict. *Id.* The evidence is sufficient to support a conviction if it compels a conclusion and passes beyond mere suspicion or conjecture. *Id.*

A person cannot be convicted of a felony on the basis of the testimony of an accomplice unless that testimony is "corroborated by other evidence tending to connect the defendant . . . with the commission of the offense." Ark. Code Ann. § 16-89-111(e)(1)(A) (Supp. 2021). "[C]orroboration . . . is not sufficient if it merely shows that the offense was committed and the circumstances of the offense." Ark. Code Ann. § 16-89-111(e)(1)(B). "The test is whether, if the testimony of the accomplice were completely eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission." *Stephenson v. State*, 373 Ark. 134, 137, 282 S.W.3d 772, 776 (2008). It is not necessary for the corroborating evidence to be sufficient in and of itself to sustain a conviction. *Id.* However, the evidence must be substantive in nature and "directed toward proving the connection of the accused with a crime and not toward corroborating the accomplice testimony." *Id.*

The trial record establishes that there was evidence, independent of accomplice Chirinos's testimony, connecting Porras to the crimes as required under section 16-89-

11

111(e)(1)(A). As the circuit court found, the strongest evidence linking Porras to the crime was the evidence establishing that the murder weapon was found in a closet in Porras's apartment. *See Taylor v. State*, 2011 Ark. 10, at 13–14, 370 S.W.3d 503, 509–10 (holding that evidence, including possession of the murder weapon, was sufficient to independently connect appellant to the crime). Additionally, the evidence showing Porras's affiliation with Slangez 96 and its rivalry with Clout Boyz—including the video showing Porras act out a rap song referencing "Slangez 96" and "Clout Boyz Killa" while displaying two automatic rifles like those fired at the murder scene—established Porras's motive and intent. *See McGehee v. State*, 348 Ark. 395, 411–12, 72 S.W.3d 867, 877 (2002) (holding that evidence of ill will and threats sufficient to independently corroborate an accomplice's testimony).

The State also introduced independent evidence showing that shortly before the shooting, Porras was with the codefendants, who were all wearing purple bandannas to show their gang affiliation; and he was attempting to locate the victim and other members of the Clout Boyz because, as Garcia testified, "he did not like them" and "he had problems with them." Further, the State presented evidence showing that Porras and his three codefendants left the wedding party in Porras's car around the time of the shooting and returned approximately an hour later.

This evidence supports the circuit court's denial of the ineffective-assistance claim on this point because it found that there was substantial evidence, independent of the accomplice's testimony, linking Porras to the crime. The circuit court specifically noted the following evidentiary points sufficiently corroborated the testimony of Jorge Chirinos

pursuant to the standard set forth in Arkansas Code Annotated section 16-89-111 (e)(1)(A): (1) the murder weapon was found in the apartment where Porras lived; (2) Snapchat videos show Porras in physical possession of the murder weapon; and (3) evidence of Porras's gang affiliation and his desire to locate the victim. Moreover, the circuit court specifically stated that Porras had not shown, as he must, that had his trial counsel properly preserved the issue for appeal, this court would have reversed his convictions. Accordingly, we hold that the circuit court's ruling was not clearly erroneous.

### B. Failure to Object to Detective Parkinson's Testimony on Hearsay or Confrontation Grounds

Under Rules 801 and 802 of the Arkansas Rules of Evidence, an out-of-court statement offered for the truth of the matter asserted by a witness other than the declarant is hearsay and is generally inadmissible. Even if the hearsay rules permit admission of a statement, admission of hearsay cannot violate a defendant's Sixth Amendment right "to be confronted with the witnesses against him." *Seely v. State*, 373 Ark. 141, 145, 282 S.W.3d 778, 782 (2008).

Pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004), the analysis of whether the hearsay statement of a witness who does not appear at trial is admissible turns on whether the statement is testimonial or not. *Id.* at 148, 282 S.W.3d at 784 (citing *Crawford*, 541 U.S. at 53–54). If a statement is testimonial, then it cannot be admitted unless the witness is unavailable to testify, and the defendant had a prior opportunity to cross-examine the witness. *Id.* at 149, 282 S.W.3d at 785 (citing *Crawford*, *supra*). Nontestimonial hearsay is not

subject to the Confrontation Clause. *Id.* (citing *Davis v. Washington*, 547 U.S. 813, 821 (2006)).

Porras notes that, although the *Crawford* court did not give a comprehensive definition of what constitutes "testimonial hearsay," it did specifically mention "police interrogations." *Crawford*, 541 U.S. at 52. The Supreme Court later held that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *See Davis*, 547 U.S. at 822. Conversely, such statements are deemed "testimonial" when "the circumstances objectively indicate that there is no such ongoing emergency and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*

Porras submits that Detective Parkinson testified to hearsay statements attributed to at least three different people—specifically, Trey Miller, Jaime Aceves Martinez, and Baldomero Hernandez—without any confrontation objection and only one hearsay objection by Porras's trial counsel. Detective Parkinson stopped only when the circuit court stepped in sua sponte. Porras urges that trial counsel was ineffective for failing to object.

In response, the State points out that that at trial, the three witnesses discussed actually testified before Detective Parkinson; accordingly, Porras cannot demonstrate either deficiency or prejudice. Regarding deficiency, at the Rule 37 hearing, trial counsel testified that he consciously did not object to the detective's testimony when it was cumulative to other testimony already before the jury because he did not want to bring additional attention

14

to the damaging evidence. Here, to the extent the challenged statements were cumulative, trial counsel's strategic decision was supported by reasonable professional judgment, which cannot provide the basis for a finding of ineffective assistance of counsel. *See, e.g., Smith v. State*, 2016 Ark. 417, at 4–5, 504 S.W.3d at 598.

Because Miller, Garcia, and Hernandez testified and were available for cross-examination, Porras cannot show that trial counsel could have made a meritorious objection under the Confrontation Clause. *See, e.g., Cogburn v. State*, 292 Ark. 564, 571, 732 S.W.2d 807, 810 (1987). Further, the trial record indicates that to the extent Detective Parkinson's testimony was elicited to explain the steps the detectives took during the investigation, not to prove the matter asserted, the statements were not hearsay. *See, e.g., Dednam v. State*, 360 Ark. 240, 247, 200 S.W.3d 875, 880 (2005). Accordingly, trial counsel was not ineffective for failing to object on Confrontation Clause or hearsay grounds since counsel is not ineffective merely for failing to make meritless objections. *See, e.g., Pigg v. State*, 2016 Ark. 108, at 7, 486 S.W.3d 751, 756.

C. Failure to Investigate and Present the Testimony of Three Witnesses

In *Farmer v. State*, 321 Ark. 283, 287–88, 902 S.W.2d 209, 212 (1995), the Arkansas Supreme Court held that counsel was ineffective for failing to subpoena the only person who could corroborate Farmer's testimony or to request a continuance to secure the witness's testimony. Although he acknowledges that the decision to call certain witnesses and reject other potential witnesses is largely a matter of trial strategy, Porras argues that trial counsel's failure to produce three necessary witnesses constituted ineffective assistance of counsel.

15

We disagree and hold that the circuit court did not clearly err in finding that trial counsel was not ineffective for failing to present the testimony of three witnesses—Roberto Pena Canjura, Louann Hartley, and Alberto Chavez. The decision of trial counsel whether to call a witness is generally a matter of "trial strategy that is outside the purview of Rule 37.1." *Stiggers v. State*, 2014 Ark. 184, at 4, 433 S.W.3d 252, 256. "[W]hen assessing an attorney's decision not to call a particular witness, it must be taken into account that the decision is largely a matter of professional judgment which experienced advocates could endlessly debate, and the fact that there was a witness or witnesses that could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness." *Id.* at 4-5, 433 S.W.3d at 256. If trial counsel's failure to call a witness is not strategic, the petitioner has the burden of showing counsel's representation was deficient, and he was prejudiced by counsel's failure to call the witness. *Id.* We agree with the State that the circuit court correctly found that trial counsel made a strategic decision not to call Canjura and Chavez and that Porras could not demonstrate prejudice as the result of the failure to call Hartley.

### 1. *Roberto Pena Canjura*

Regarding Porras's claim that trial counsel should have called Canjura as an alibi witness, Canjura testified at the Rule 37 hearing that he and Porras had been friends for more than ten years. At the time of the shooting, he was living near the crime scene, and he claimed that he was at home playing an online video game with Porras when he heard the gunfire. He estimated that they started playing between 10:00 and 10:30 p.m., and they

16

played for about an hour. Canjura admitted that he is a habitual offender with prior felony convictions for breaking or entering, criminal mischief, felon in possession of a firearm, possession of methamphetamine, and possession of drug paraphernalia.

Prior to trial, trial counsel was aware that Canjura was willing to testify to the above. But after counsel explained that Canjura's testimony needed to be supported by forensic evidence verifying that he was online, Porras admitted that he was not playing the online video game at the time of the murder. Furthermore, counsel knew that Canjura's credibility could be challenged with his prior felony convictions and the evidence showing that Porras was at the wedding party and in the car with the codefendants around this same time. He believed the credibility of the entire defense would be undermined by Canjura's testimony.

The circuit court credited trial counsel's testimony that Porras had admitted to him that he was not playing the online video game at the time of the murder. The circuit court agreed with trial counsel's conclusion that Canjura's lengthy criminal history would have caused the jury to question his credibility and that the jury would likely have found his testimony so unbelievable that it would have actually worked against Porras's defense. *See, e.g.*, *Williams v. State*, 2017 Ark. 123, at 5, 517 S.W.3d 397, 401. We hold that the circuit court did not clearly err in finding that trial counsel made a strategic decision, based on sound and reasonable professional judgment, not to call Canjura as an alibi witness; therefore, the decision is not a proper basis for Rule 37 relief. *See, e.g.*, *Stiggers*, 2014 Ark. 184, at 4, 433 S.W.3d at 256.

2. *Louann Hartley*

17

On January 14, 2017, Hartley called police and police responded to her backyard just near the alleyway where the shooting occurred. Hartley told police that she heard approximately seven gunshots, looked outside, and saw a "light grey 2-door car that she described as a coupe, leave the alleyway south bound." This was consistent with Chavez's testimony that the shooters were in Ryan Oxford's mother's car at the time of the shooting, which was a two-door car.

Porras argues that trial counsel was deficient by failing to secure Hartley's presence at Porras's jury trial given the statement she initially made to police about the shooter car that was provided in discovery. Porras claims trial counsel was deficient in relying on the State to call necessary witnesses for his client's defense. *See Raquel-Dieguez v. State*, 2015 Ark. App. 626, at 9, 475 S.W.3d 585, 591.

We note that Hartley was subpoenaed by the State, but she failed to appear to testify at trial. Because she was unavailable, Porras's trial counsel argued that the defense should be allowed to introduce the police report that contained her statement under Rule 804(b)(5) of the Arkansas Rules of Evidence. In response, the State agreed to recall Officer Danny O'Connor, who took Hartley's statement, and he testified regarding her description of the car she saw leaving the scene—"a [two] door, light car, light colored car." Because the substance of Hartley's expected exculpatory testimony was presented to the jury through the testimony of Officer O'Connor, Porras cannot demonstrate *Strickland* prejudice. *See, e.g., Smith v. State*, 2016 Ark. 417, at 6, 504 S.W.3d at 598–99.

3. *Alberto Chavez*

Codefendant Alberto Chavez testified at the Rule 37 evidentiary hearing that Porras was not present when he and the two other codefendants shot up Justin Lopez's trailer. Chavez wrote an affidavit confirming as much dated November 7, 2017, and was prepared to testify at Porras's jury trial had he been called. Chavez explained that he implicated Porras in a custodial statement to police only because he was afraid and because he did not want Chirinos—a juvenile at the time—to go through the same things he went through in the justice system as a child. Chavez explained that he, Oxford, and Chirinos committed the charged acts using Porras's car and then returned to Porras's apartment after the shooting. Chavez explained that they left their weapons at Porras's apartment while they went out, and that Oxford retrieved one of the weapons when they got back to Porras's apartment. Chavez's testimony makes clear that, at most, Porras was an accessory after the fact rather than an accomplice. *See Raynor v. State*, 343 Ark. 575, 36 S.W.3d 315 (2001).

Porras submits that had the jury heard from Chavez that Porras was not physically present at the scene of the charged acts or involved in any way, there is a more than reasonable probability he would have been acquitted of the charged offenses. *See Sturgeon v. Quarterman*, 615 F. Supp. 2d 546 (S.D. Tex. 2009). Porras maintains that the prejudice is obvious and that trial counsel accordingly was ineffective.

The Arkansas Supreme Court has held the unreasonable failure to call particular witnesses ineffective several times. *See, e.g.*, *State v. Dillard*, 338 Ark. 571, 998 S.W.3d 750 (1999); *Montgomery v. State*, 2011 Ark. 462, 385 S.W.3d 189 (2011). Failure to interview a codefendant or eyewitness who confessed to the charged offense and maintained that the

defendant was not the other perpetrator of the charged offenses has been found to be ineffective. *See, e.g., Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). Similarly, Porras argues that the failure to interview Chavez was ineffective because he was a codefendant who maintained that Porras was not involved.

At the Rule 37 hearing, Chavez testified that in his initial statement, he told the detective that Porras drove to the crime scene, and he and Chirinos remained inside the car while Porras and Oxford got out and fired numerous shots at Miller's trailer. Also in his first statement, he told the detective that, after leaving the scene, they went back to Porras's apartment, and he carried the AR-15 inside.

But Chavez also testified that he subsequently recanted his statement. In Chavez's affidavit that he signed before Porras's trial, he averred that Oxford and Chirinos were the shooters, and Porras was not at the crime scene. He claimed that he initially falsely identified Porras as one of the shooters because he was scared about returning to prison and in order to protect Chirinos because he was only sixteen years old.

Trial counsel testified that he was aware of Chavez's affidavit prior to trial. However, Chavez's counsel told him that Chavez would invoke his Fifth Amendment right against self-incrimination; therefore, as trial counsel testified, he could not be compelled to testify. Trial counsel is not ineffective for failing to call a witness who intends to invoke his Fifth Amendment right against self-incrimination. *See Huddleston v. State*, 339 Ark. 266, 273, 5 S.W.3d 46, 51 (1999).

Counsel had numerous legitimate strategic reasons for not calling Chavez as a witness. First, he knew the State would use Chavez's previous felony convictions for manslaughter and first-degree battery to impeach his credibility. Second, by calling him, counsel would have opened the door for the State to bring the content of his entire custodial statement into evidence. Thus, the jury would have been told that Chavez initially told police that Porras drove his car to the crime scene; initiated contact with the victim; fired numerous shots into the trailer; and then drove them to Porras's apartment where they hid the guns. Finally, this evidence would have been consistent with Chirinos's accomplice testimony; therefore, the jury would have heard evidence that two codefendants gave consistent accounts that Porras was one of the shooters. Trial counsel had reason to conclude that Chavez would have been a very "damning, detrimental, terrible" witness for Porras.

There is ample evidence to support the circuit court's finding that trial counsel made a strategic decision not to call Chavez to testify. As such, we affirm the circuit court's denial of this ineffective-assistance claim.

### D. Failure to Request Second-Degree-Murder Instruction

Porras next argues that the circuit court clearly erred by finding trial counsel was not ineffective for failing to request a second-degree-murder instruction. He claims the basis for the denial was improper because a circuit court may instruct on the lesser included offense of second-degree murder even when a defendant asserts his actual innocence in a homicide case. *See, e.g.*, *Gonzales v. State*, 2019 Ark. App. 600, 589 S.W.3d 505.

A party is entitled to a jury instruction when there is some basis in the evidence to support giving the instruction. *Vidos v. State*, 367 Ark. 296, 300, 239 S.W. 3d 467, 476 (2006). Additionally, a party is entitled to a jury instruction when there is sufficient evidence to raise a question of fact. *Coakley v. State*, 2019 Ark. 259, at 7, 584 S.W.3d 236, 240. It is a reversible error to refuse to give an instruction on a lesser included offense when the instruction is supported by even the slightest evidence. *Brown v. State*, 325. Ark. 504, 929 S.W.2d 146 (1997).

Here, Porras claims there was sufficient evidence for the circuit court to instruct on the lesser included offense of second-degree murder similar as it did with his codefendants. The same circuit court presided over the jury trials of both of Porras's codefendants and instructed the juries in both cases on the lesser offense of murder in the second degree. Codefendant Chavez was also charged with first-degree murder in the same circuit court, but the circuit court instructed the jury on second-degree murder, and Chavez was ultimately convicted of that lesser offense. *See Chavez v. State*, 2018 Ark. App. 527, 564 S.W.3d 268. Porras's other codefendant, Ryan Oxford, was also charged with first-degree murder but was ultimately convicted of only second-degree murder following his jury trial. *See Oxford v. State*, 2018 Ark. App. 609, 567 S.W.3d 83.

We held there was sufficient evidence for Chavez's second-degree-murder conviction, noting there was sufficient "proof of [Chavez's] joint participation with his codefendants," including Porras. *Chavez*, 2018 Ark. App. 527, at 14–15, 564 S.W.3d at 278. We also held there was sufficient evidence that Chavez actually fired the fatal shot because he brought the

murder weapon to Porras's residence after the shooting and because he was recorded in an earlier video holding the same weapon. *Id.* at 15 n.1, 564 S.W.3d at 278 n.1.

Porras argues here that had trial counsel requested a second-degree-murder instruction, he would have received it. Further, he maintains there is a reasonable probability that he would have been convicted of only second-degree murder rather than first-degree murder, just like his codefendants.

We disagree. Porras's defense theory was a complete denial of any wrongdoing, which trial counsel confirmed through his testimony at the Rule 37 hearing. He noted that Porras denied any wrongdoing, and according to Arkansas law, when a defendant asserts actual innocence, there is no rational basis for a lesser-included-offense jury instruction. Although Porras testified at the Rule 37 hearing, he did not rebut trial counsel's assertion that he had previously agreed with trial counsel's decision to present an actual-innocence defense.

The decision to pursue an all-or-nothing defense based on complete innocence is a strategic decision, and "counsel is not ineffective merely because an all-or-nothing strategy fails." *Feuget v. State*, 2015 Ark. 43, at 7–8, 454 S.W.3d 734, 740. The circuit court found that Arkansas law is well established—a lesser-included-offense instruction is not warranted when a defendant maintains he is innocent of the crime of which he has been accused. *See Brown v. State*, 321 Ark. 413, 416, 903 S.W.2d 160, 162 (1995). For example, in *Friar v. State*, 2016 Ark. 245, at 19–20, in which the defendant was charged with capital murder and attempted capital murder, our supreme court held that the circuit court did not abuse its discretion by refusing to give instructions on lesser included offenses because the defense to

23

the charges was a complete denial of wrongdoing. Porras's only defense to the charge of first-degree murder was a complete denial of wrongdoing. Because there was no rational basis for instructing the jury on second-degree murder, the circuit court did not clearly err in finding trial counsel was not ineffective for failing to proffer the instruction.

Moreover, although Porras asserts there was sufficient evidence for the circuit court to instruct on the lesser included offense of second-degree murder—just like his codefendants Oxford and Chavez who were charged with first-degree murder but convicted of second-degree murder—Porras was the only one of the four codefendants who claimed he was not at the crime scene. Porras denied any participation in the charged offenses, and the trial record is devoid of any evidence that would support a lesser included offense. Accordingly, we hold that the circuit court did not clearly err in finding that trial counsel was not ineffective by failing to request that the jury be instructed on second-degree murder.

E. Opening the Door to Damaging Testimony by Detective Parkinson

Porras next submits that trial counsel was ineffective by opening the door when he asked Detective Parkinson whether anyone had told him they were present at the scene of the shooting in the first place. Even if otherwise inadmissible, a party who invites discussion of a certain subject opens the door to questioning by the opposing party so that the opposing party may "fight fire with fire." *See Washburn v. State*, 2020 Ark. App. 90, at 10, 596 S.W.3d 512, 518. Porras submits that trial counsel was aware of the codefendants' statements identifying his client because he objected to their admission. Porras claims that, given this knowledge, it was objectively deficient to ask a series of questions that would make these

24

codefendants' hearsay statements admissible to rebut his contention that no one had confessed to being at the scene. Porras asserts that but for trial counsel's error, the jury would not have heard each one of Porras's codefendants confess to being present at the scene of the crime, making Porras seem guilty by mere association. Courts have found trial counsel ineffective by opening the door to damaging evidence, and he argues there is a reasonable probability he would not have been convicted but for this testimony.

We disagree and hold that the circuit court did not clearly err in finding trial counsel was not ineffective by opening the door to Detective Parkinson's otherwise inadmissible testimony. In cross-examining Detective Parkinson, trial counsel asked a series of questions establishing that, despite taking soil samples and shoe impressions from the crime scene, searching Porras's car, and seizing the defendants' shoes, the police did not have forensic evidence connecting any of the defendants to the crime scene. *Porras*, 2018 Ark. App. 592, at 4–5. Porras now argues that trial counsel was ineffective by pursuing this line of questioning because it opened the door on redirect to Detective Parkinson's explanation that it was not necessary to conduct forensic testing on this evidence because each of Porras's codefendants confessed to being at the crime scene. Therefore, the circuit court did not clearly err in determining that such questions were reasonable trial strategy to highlight to the jury that there were no shoe impressions, soil samples, or other forensic evidence linking any of the codefendants to the crime scene, even if the strategy may have opened the door to the admission of other testimony. *See Lee v. State*, 2009 Ark. 255, at 20–21, 308 S.W.3d 596, 608–09. Strategic decisions supported by reasonable professional judgment are not a

25

proper basis for Rule 37 relief, and "[t]his is true even where the chosen strategy was improvident in retrospect." *Sartin v. State*, 2012 Ark. 155, at 4, 400 S.W.3d 694, 697.

Even assuming the circuit court had found that trial counsel's line of questioning was not based on reasonable professional judgment, as Porras asserts, we hold that he has failed to establish that he was prejudiced by counsel's alleged deficient representation. *See, e.g., Strickland*, 466 U.S. at 693. To reiterate, the defense theory was clear—Porras claimed that he was never at the crime scene and that he had no involvement in the crime. And when the State emphasized Detective Parkinson's testimony in closing, trial counsel objected, and the circuit court sustained the objection. The circuit court then instructed the jury to disregard the argument as it related to what Oxford and Chavez had said. Accordingly, Porras's claim on this particular issue likewise must fail.

F. Failure to Object to Testimony on Hearsay or Confrontation Grounds

Porras points out that trial counsel failed to object to Detective Parkinson's testimony being hearsay—either generally or that admission of the codefendants' statements did not specifically implicate Porras—nonetheless violated his confrontation rights. He claims trial counsel was ineffective by failing to object to this testimony because the codefendants' statements at issue were introduced for the truth of the matter asserted: specifically, to show that Chavez, Oxford, and Chirinos admitted to being present and were, in fact, present at the murder scene. Porras asserts that because all the third-party statements to which Detective Parkinson testified were custodial statements made during interrogations by police, they were testimonial. *See, e.g., United States v. Bordeaux*, 400 F.3d 548 (8th Cir. 2005).

26

Porras submits that had trial counsel objected on hearsay or confrontation grounds, this testimony would have been excluded by the circuit court or on direct appeal. *See, e.g., N.W. v. State*, 2015 Ark. App. 57, 454 S.W.3d 271. He contends that but for this testimony showing that each of Porras's codefendants admitted being present at the murder scene, there exists a reasonable probability of a different outcome. We disagree.

Porras's ineffective-assistance claim based on trial counsel's failure to object to Detective Parkinson's testimony regarding the codefendants' admission to being at the crime scene is meritless because objections on these grounds would not have prevailed. *See, e.g., Turner v. State*, 2016 Ark. 96, at 4, 486 S.W.3d 757, 760 (noting that failure to make a meritless objection is not an instance of ineffective assistance of counsel). His argument that Detective Parkinson's testimony was admitted in order to prove the matter asserted—that the codefendants confessed to being present at the crime scene—is not supported by the record. The testimony was admitted to show why there was no forensic evidence linking the defendants to the crime scene, despite the fact that the police took soil samples and shoe impressions from the crime scene, searched Porras's car, and seized the defendants' shoes. *See Porras*, 2018 Ark. App. 592, at 4–5. Where a statement is admitted for a legitimate, non-hearsay purpose, meaning not to prove the truth of the assertions therein, the statement is not hearsay under the traditional rules of evidence, and the non-hearsay aspect raises no confrontation-clause concerns. *See Dednam*, 360 Ark. at 248, 200 S.W.3d at 880. Any objection made by trial counsel would have been without merit; accordingly, failure to make

a meritless objection is not an instance of ineffective assistance of counsel. *See, e.g.*, *Turner*, 2016 Ark. 96, at 4, 486 S.W.3d at 760.

## G. Failure to Object to the "Journal"

Porras next points out that the State introduced a notebook/journal, which contained several pages of handwritten rap lyrics, without objection by trial counsel. He argues that trial counsel was ineffective by choosing not to object to this highly prejudicial yet irrelevant evidence. Although relevant character evidence is admissible in sentencing pursuant to Ark. Code Ann. § 16-97-103(5) (Repl. 2016), Porras submits that this evidence was not relevant. Rather, he claims it showed merely that he was an aspiring rapper with verses featuring violent lyrics rather than someone involved in gang activity. Porras argues that any marginal probative value the evidence had—which Porras does not concede—was grossly outweighed by the danger of unfair prejudice, and admission was incredibly prejudicial.

Porras submits that rather than prove actual gang activity, the State was permitted to argue that Porras was a full-fledged gang member and killer only on the basis of rap lyrics written in a composition notebook. Porras submits that gang-affiliation evidence is not admissible when it is meant merely to prejudice a defendant or prove guilt by association with unsavory characters. *See United States v. Roark*, 924 F.2d 1426, 1433–34 (8th Cir. 1991). As the Eighth Circuit Court of Appeals recently outlined in *United States v. Payne-Owens*, gang-related evidence is often admissible when "the defendant is . . . a gang member himself," the issues in the case "'concern the *mere fact* of a defendant's gang membership' rather than

28

'sanction[ing] a wide ranging inquiry into the generic criminality and violent dispositions of gangs,'" and the evidence "'is generally an *unavoidable incident* of presenting other permissible evidence.'" 845 F.3d 868, 873 (8th Cir. 2017) (quoting *United States v. Street*, 548 F.3d 618, 632 (8th Cir. 2008)).

Trial counsel testified he did not object to the "journal" because it was part of his trial strategy not to do so, so as to cast Porras as an aspiring rapper. Porras argues that trial counsel was objectively deficient by failing to object to evidence that he knew to be both inadmissible and overly prejudicial. He submits it cannot constitute reasonable strategy to allow such evidence when it had no relevance to the charged acts and instead encouraged the jury to find Porras guilty of the charged acts in accordance with his poor character as a purported gang member instead of the substantive evidence of guilt. Porras further argues the resulting prejudice is obvious and notes that this court has affirmed a circuit court's exclusion of gang-affiliation evidence because of its inherently prejudicial nature pursuant to Arkansas Rule of Evidence 403. *See State v. Jones*, 322 Ark. 32, 907 S.W.2d 674 (1995).

We hold that the circuit court did not commit clear error in finding that trial counsel was not ineffective for failing to object to the admission of Porras's journal. The journal did not contain any writings particular to this crime other than showing Porras's gang affiliation, yet there is evidence in the record to support that trial counsel's decision not to object to its introduction was strategic.

As trial counsel testified at the Rule 37 hearing, he knew the State's evidence would show Porras's gang affiliation, and it included a video of Porras and three codefendants

smoking marijuana, displaying firearms like those used in the shooting, and acting out rap lyrics that included references to Slangez and "Clout Boyz Killa." In an attempt to explain and minimize the video, trial counsel told potential jurors during voir dire that Porras was an aspiring rap musician and that he anticipated the State would show videos of him acting out rap lyrics in a manner typical of many videos produced by rap artists. In cross-examining Porras's girlfriend, trial counsel confirmed that Porras was pursuing opportunities to sell his lyrics and perform with other rap artists. Counsel emphasized the point yet again in closing.

The record before us supports the conclusion that trial counsel made a strategic decision not to object to the journal because it supported the defense's theory that the video was art. We hold that the circuit court did not clearly err in finding that trial counsel's strategy was a matter of professional judgment and not grounds for postconviction relief. *See, e.g.*, *Hickey v. State*, 2013 Ark. 237, at 7, 428 S.W.3d 446, 453.

H. Reliance on Several Pieces of Evidence in Finding a Lack of Prejudice

Porras's last argument deals with the circuit court pointing to several pieces of evidence in finding a lack of prejudice for several of his claims. He maintains that this evidence was insufficient to show overwhelming guilt such that it would overcome the prejudice from trial counsel's many errors.

He argues that Chavez's testimony that he left the murder weapon at Porras's apartment showed only that the shooters went to Porras's residence after the charged acts had occurred. Porras argues that the evidence did not place Porras at the scene of the shooting or indicate any involvement on his part. Similarly, a Snapchat video of Porras

30

holding a weapon did nothing to show Porras's involvement in the charged acts. Rather, he maintains that it was merely consistent with his being an aspiring rapper. Porras further argues that evidence that he owned or was wearing a purple bandanna showed, at most, Porras's potential gang affiliation with the actual shooters but, again, did nothing to show Porras's involvement in the charged act. Just because one gang member commits a crime does not make all other members of the same gang guilty of that offense. And finally, he argues yet again regarding the lyrics contained in the "journal." While relevant character evidence is admissible in sentencing pursuant to Ark. Code Ann. § 16-97-103(5), Porras reiterates his argument that the evidence at issue was not relevant and showed only that he was involved in music rather than in gang activity, which is not substantive evidence of guilt.

We disagree and hold that the circuit court did not clearly err in relying on several pieces of evidence in finding a lack of prejudice. Porras appears to try to discount the evidence of guilt, arguing that the "evidence was insufficient to show overwhelming guilt such that it would overwhelm the prejudice from trial counsel's many errors." The assertion by Porras misstates the standard for establishing *Strickland* prejudice—the evidence does not have to be overwhelming in order for his claim to fail. To demonstrate prejudice, Porras was required to show a "reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Watkins v.* State, 2010 Ark. 156, at 9, 362 S.W.3d 910, 916 (quoting *Strickland*, 466 U.S. at 695). The record does not support Porras's allegation that but for trial counsel's alleged error, there is a reasonable probability that the outcome of the trial would have been different. As such, the circuit court did not clearly err

by denying his ineffective-assistance claims, and we affirm the circuit court's order denying Porras's Rule 37 petition.

Affirmed.

VIRDEN and WOOD, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.